45 A.3d 281

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Louis Peter TANKO, Jr.**

**Misc. Docket AG No. 70, Sept. Term, 2010.**

Court of Appeals of Maryland.

May 23, 2012.

18

James N. Gaither, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Louis Peter Tanko, Jr., Annapolis, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and MCDONALD, JJ.

BARBERA, J.

The Attorney Grievance Commission ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, attorney Louis P. Tanko. The petition concerns Respondent's conduct in two separate client matters: the representation of Mr. Howard G. Brown for post-conviction remedies; and the representation of Ms. Jan'e Colahar (a.k.a. Puranda) in an employment compensation case.

We transmitted the matter to the Circuit Court for Anne Arundel County and designated the Honorable William C. Mulford, II of the Fifth Judicial Circuit of Maryland to hear the matter and make findings of fact and conclusions of law. The hearing judge conducted a hearing on September 8 and 12, 2011 and issued his findings and conclusions in a written decision filed in the Circuit Court on October 26, 2011. The hearing judge concluded, by clear and convincing evidence, that Respondent had violated Maryland Lawyers' Rules of Professional Conduct ("MRPC") 1.1 (competence), 1.2(a) (scope of representation and allocation of authority between client and lawyer), 1.4(a) and (b) (communication), 1.15(a) and (c) (safekeeping property), 5.5(a), (b)(1) and (b)(2) (unauthorized practice of law), 8.1(b) (bar admission and disciplinary matters), and 8.4(a)-(d) (misconduct).

I.

The hearing judge first found, as background, that Respondent was admitted to the Maryland Bar in 1989 and to the District of Columbia Bar in 1993. This Court suspended Respondent from the practice of law on April 17, 2009 for sixty days. Respondent was familiar with the Maryland Rules pertaining to his suspension, but, after the suspension period concluded, he did not apply for reinstatement before he resumed representing clients. "[Respondent] testified that he

was unaware that he was required to file a petition for reinstatement pursuant to Maryland Rule 16–781." Instead, he relied upon what he learned through consultation with other attorneys, the erroneous issuance by the Maryland State Bar Association ("MSBA") of an identification card; and the indication on the Client Protection Fund website that he was "in good standing." Respondent never paid the costs assessed to him by this Court pursuant to his suspension order and never confirmed with this Court, the Office of Bar Counsel, or the Attorney Grievance Commission of Maryland his authorization to practice after the suspension period concluded.

The hearing judge also found that, once Respondent became aware that he was not authorized to practice, "he sent out letters to his current clients and withdrew from his cases." He thereafter twice sought *nunc pro tunc* reinstatement from this Court, both of which requests were denied.

### The Brown Complaint

The hearing judge found that, on September 16, 2008, Respondent entered into a retainer agreement with Mrs. Sharon Gosnell (hereafter Mrs. Gosnell), the mother of Howard G. Brown (hereafter Mr. Brown), for the purpose of "prepar[ing] and fil[ing] a writ of habeas corpus in federal court until ruled on."[1] Mrs. Gosnell was to pay $5000 for 50

---

1. The parties' submissions to this Court and the findings of fact and conclusions of law by the hearing judge reflect some possible confusion as to who was Respondent's client with respect to Mr. Brown's case. We stress that Mr. Brown was Respondent's client as it was his legal interest Respondent was retained to represent. Mrs. Gosnell entered into a retainer agreement with Respondent as a third-party payer for the benefit of Mr. Brown.

Maryland Lawyers' Rules of Professional Conduct ("MRPC") 1.8(f) dictates the circumstances under which an attorney may "accept compensation for representing a client from one other than the client." Such an arrangement is permissible only if: "(1) the client gives informed consent; (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by Rule 1.6." Bar Counsel's petition did not allege a violation of MRPC 1.8(f), so we offer no comment as to whether the mandates of that rule were satisfied. We point out, though, that,

hours of work, and, if the work were to exceed 50 hours, they would renegotiate the agreement. Mrs. Gosnell's husband, Richard Gosnell, paid $4000 initially, followed by monthly payments to cover the balance. Those funds were not deposited into an attorney trust account. Instead, language in the retainer agreement provided as follows: "Client consents to the deposit of any funds paid hereunder into the personal account of the Attorney, rather than a Client Trust Account, pursuant to Rule 1.15 of the Maryland Rules of Professional Conduct and Client acknowledges his/her familiarity with said rule." The hearing judge credited Mrs. Gosnell's testimony, as well as that of her husband, that Respondent never explained the significance of that provision or MRPC 1.15, nor did he provide the Gosnells with a copy of that Rule.

The hearing judge also credited the testimony of Mr. Brown (and Mrs. Gosnell) that they understood Respondent would "file a federal writ of habeas corpus on behalf of Brown." In that regard, the hearing judge found that, even though "over the course of representation they did ask [Respondent] to explore other options for Brown, *e.g.* filing a [Maryland Code (2000, 2009 Repl.Vol.),] Health General [§] 8–505 Petition For Examination, their goals for the federal writ of habeas corpus remained the same." In so finding, the hearing judge rejected, albeit implicitly, Respondent's testimony that he understood his representation of Brown "to include anything that would help Brown get out of jail."

The hearing judge found that Respondent, based on his lack of "prior experience with federal habeas corpus, Health General 8–505 Examinations, and parole hearings" was not competent to represent Mr. Brown in those matters. The judge also found that Respondent never filed a habeas corpus petition, or any other motion, on behalf of Mr. Brown. Respondent did

---

insofar as what was understood to be the nature of the attorney-client relationship and expectations regarding that relationship, we must focus on the understanding and expectations of Mr. Brown, not Mrs. Gosnell. Mrs. Gosnell, nevertheless bore witness, in part, to the attorney-client relationship between Respondent and her son; therefore, her testimony has some relevance to the issue.

not maintain time sheets to account for the hours he spent on the matter. The hearing judge nonetheless credited Respondent's testimony that he worked over fifty hours on the case.

The hearing judge found that, over the course of the representation, Respondent met with Mr. Brown in prison and with Mr. and Mrs. Gosnell on three occasions, reviewed Mr. Brown's file, and researched federal habeas corpus law. We surmise from the hearing judge's conclusions of law that he also credited Mr. Brown and the Gosnells' testimony that Respondent was frequently difficult to reach and rarely returned messages, and never informed them that he was terminating his representation (in March 2009) or that he had been suspended from the practice of law on April 17, 2009. Mr. Brown learned that Respondent was suspended only when Respondent attempted to visit Mr. Brown at Jessup Correctional Institution in December 2009, but was turned away after producing an expired MSBA identification card.

After receiving a complaint regarding Respondent's handling of Mr. Brown's case, the Attorney Grievance Commission, pursuant to a letter dated February 24, 2010, asked Respondent to provide a copy of Mr. Brown's client file to Bar Counsel. The Commission sent another letter dated March 9, 2010 regarding this request. An investigator for the Commission met with Respondent at a diner in Annapolis, after having obtained a release from Mr. Brown authorizing Respondent to provide the file to Bar Counsel. The investigator offered to copy the file in the Commission's office, to save Respondent the copying costs. Respondent refused at that time to provide the file, notwithstanding the investigator's reminding Respondent of his obligation to respond to Bar Counsel's lawful demand for information. Subsequent to this meeting, Respondent sent the Commission a letter requesting prepayment of copying costs in lieu of bringing the file to the Commission's office for copying. Respondent finally provided the file to Bar Counsel in open court before the hearing judge in September 2011.

The hearing judge concluded, based on these factual findings, that Respondent violated MRPC 1.1, 1.2(a), 1.4, 1.15, and 8.1(b).

*The Colahar Complaint*

The hearing judge found that Respondent agreed in July or August 2009 to represent Jan'e Colahar in a lawsuit against her former employer for unpaid wages. Petitioner proffered a retainer agreement that included a signature, purportedly of Ms. Colahar. The agreement contains a provision similar to that in the agreement signed by Mrs. Gosnell in Mr. Brown's case. Ms. Colahar testified that she did not sign the retainer agreement and did not become aware of its existence until after she terminated Respondent. The hearing judge ultimately found that Ms. Colahar did not sign the retainer agreement, and he evidently credited her testimony that Respondent did not provide a copy of MRPC 1.15 and never explained the rule to her. The hearing judge found that Ms. Colahar paid Respondent a fixed fee of $1000 to represent in her in the employment suit. Respondent did not deposit that money into a client trust account.

The hearing judge further found that Respondent did not explain adequately to Ms. Colahar how he was handling the case, was difficult to reach by telephone and email, and failed to advise her that he would not be requesting interrogatory responses or other discovery from the defendant in her case. The hearing judge found that, "[u]pon learning of [Respondent's] decision, . . . [Ms. Colahar] requested [Respondent] file such discovery requests, but [Respondent] said it would not be necessary for such a 'simple case.' On this matter, [Ms.] Colahar testified she ultimately deferred to [Respondent] for his judgment and trusted him because of his legal expertise." The hearing judge also noted that Respondent properly presented a settlement offer to Ms. Colahar and abided by her decision to reject the offer.

The hearing judge found that, at the first hearing in the Colahar matter, Respondent arrived late and had not timely informed Ms. Colahar before the hearing that she needed to

produce her W–2 tax forms. Ms. Colahar terminated Respondent at some point thereafter because she believed Respondent was not acting in her best interests. Respondent never informed Ms. Colahar that he had been suspended from practice on April 17, 2009 or that he remained unauthorized to practice.

Based on these factual findings, the hearing judge concluded that Respondent's conduct in the Colahar matter constituted violations of MRPC 1.1, 1.2(a), 1.4, and 1.15.

\* \* \*

The hearing judge further concluded that Respondent had violated MRPC 5.5(a) and (b) and 8.4 based on his conduct in both the Brown and Colahar matters.

### Mitigation

With respect to mitigation, the hearing judge found that Respondent exercised "good faith efforts to ensure he was in good standing," had a "good faith belief he was still licensed, and … prompt[ly] return[ed] … his MSBA card upon discovery it was expired." Specifically, the hearing judge found that Respondent "made various efforts upon expiration of the sixty (60) day suspension in order to determine that he was authorized to practice law." Such efforts included "appl[ying] for a new MSBA card[,] … consult[ing] with other attorneys as to the process of becoming reauthorized to practice law upon completing his suspension period[,] … [and] check[ing] his status on the Client Protection Fund website." The hearing judge concluded that these efforts demonstrated that "[Respondent] did not believe he had to take further steps, including applying for reinstatement, before resuming the practice of law."

The hearing judge further found that Respondent "did not intend to misrepresent his clients or the court(s), or deceive clients into believing he was authorized to practice law when in fact he had not been reinstated." And, "[a]s soon as he realized he was not authorized to practice law, [Respondent] sent out letters to his current clients and withdrew from

cases." The hearing judge found that Respondent "sincerely believes he did not intentionally practice law in violation of the Maryland Rules, even though his conduct was improper," and he "did not knowingly make a false statement or fail to disclose a fact necessary to correct a misapprehension."

## II.

### A. The Standard of Review

▪ "In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Att'y Grievance Comm'n v. Bleecker*, 414 Md. 147, 167, 994 A.2d 928, 940 (2010) (citations omitted). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Att'y Grievance Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010) (quoting *Att'y Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006)). That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. *Id.* at 707, 4 A.3d at 964. In that regard, "[t]he hearing judge is permitted to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Guida*, 391 Md. at 50, 891 A.2d at 1095 (quoting *Att'y Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000)).

▪ We review de novo the hearing judge's proposed conclusions of law. *Att'y Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 236 (2008). In other words, "the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court." *Att'y Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 764 (2002) (quoting *Att'y Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (alteration in original)). In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a "clear and convincing" standard of proof. *Att'y Griev-*

*ance Comm'n v. Siskind,* 401 Md. 41, 54, 930 A.2d 328, 335 (2007).

## B. Exceptions

Both Petitioner and Respondent filed exceptions to the hearing judge's findings and conclusions. Respondent excepts "to each and every conclusion of law." Petitioner excepts to the hearing judge's legal conclusions pertaining to the charged violations of MRPC 5.5 and 8.4, and to certain of the judge's findings in mitigation. Given the number of exceptions before us, we deem it appropriate to resolve each of them in connection with, and as they relate to, our de novo review of the hearing judge's conclusions of law on each of the charged rule violations.

### 1. The Brown Matter

#### MRPC 1.1—Competence

MRPC 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The hearing judge concluded that Respondent violated this Rule in three ways: first, by undertaking to file (not merely to research the efficacy of filing) a federal habeas corpus petition, without the level of competence needed to handle the matter; second, by failing "to prepare and file a federal writ of habeas corpus, pursuant to a retainer agreement"; and third, by failing "to keep his client(s) reasonably informed and failing to file any other legal documents pertaining to Brown's case."

Respondent excepts to the hearing judge's conclusion that he violated MRPC 1.1. He points out the hearing judge's finding that he "performed substantial labor ... towards the preparation of a *habeas corpus* petition." Respondent also insists that "an agreement had been reached between Respondent and Mr. Brown to forgo the filing of the petition (due to likelihood of denial)"; and "[he] was not retained for the specific purpose of preparing a writ of *habeas corpus,* but to

'see what can be done' to secure Mr. Brown's release from jail." We overrule this exception.

The hearing judge, in reaching the conclusion he did, obviously, albeit implicitly, credited Mr. Brown's testimony that a federal habeas corpus petition was the initial and continuing goal of the representation. The hearing judge had the prerogative to resolve disputes in the evidence and to rely on Mr. Brown's version of what the representation entailed. The hearing judge also considered the retainer agreement reflecting that the representation was for the purpose of preparing and filing a federal habeas corpus petition. The hearing judge's factual findings are not clearly erroneous; accordingly, we accept them.

MRPC 1.1 requires a lawyer to "provide competent representation to a client," which, in turn, "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Respondent, by his own admission, was not familiar with the procedural complexities attendant to federal habeas corpus matters when he agreed to file a petition on Mr. Brown's behalf. Respondent's self-proclaimed lack of knowledge rendered incompetent his agreeing actually to file a petition, rather than determine preliminarily whether Mr. Brown was eligible even to seek federal habeas corpus relief, much less the likelihood of success.[2]

---

2. Because we hold that Respondent violated MRPC 1.1 in this regard, we need not opine on whether Respondent's failure actually *to file* a federal habeas corpus petition also demonstrates a lack of competence. We have recognized the complete failure to pursue a client's matter as generally constituting a violation. *See Att'y Grievance Comm'n v. De La Paz*, 418 Md. 534, 553–54, 16 A.3d 181, 192–93 (2011). Relevant to the failure to pursue an agreed-upon course of action on behalf of a client, and particularly so in this case, is the reason behind the attorney's failure to act. In the present case, the hearing judge did not make a finding as to why Respondent did not file the habeas corpus petition. Nevertheless, the evidence was undisputed that Mr. Brown already had filed an unsuccessful petition in the same matter several years earlier. Such a circumstance suggests a very low probability of success (if any, at all) for a subsequent petition. *See* 28 U.S.C. § 2244(b)(2) ("A claim presented in a second or successive habeas corpus application ... that was not presented in a prior application shall be dismissed unless" the

These facts constitute clear and convincing evidence to support a conclusion that Respondent violated MRPC 1.1. *Cf. Ugwuonye*, 405 Md. at 369–70, 952 A.2d at 236–37 (concluding that the respondent violated MRPC 1.1 by failing to decline a case that had no merit); *Att'y Grievance Comm'n v. James*, 385 Md. 637, 662, 870 A.2d 229, 244 (2005) (observing that, "even with cursory research, [the respondent] would have found that tort damages are not allowed based upon adultery," and thereby concluding that the respondent, in agreeing to represent a client in a suit for such damages, failed to provide competent representation).

### MRPC 1.2(a)—Scope of Representation and Allocation of Authority Between Client and Lawyer

The hearing judge concluded that Respondent violated MRPC 1.2(a) because, "[b]y failing to prepare and file a writ of habeas corpus, or file any other documents, regarding any matter or claim on behalf of Brown, ... [Respondent] did not abide by his clients' decisions concerning the objectives of representation." Respondent excepts to the hearing judge's conclusion that his conduct violated 1.2(a) for the same reasons

claim falls within one of two listed exceptions.); 28 U.S.C. § 2244(d)(1) ("A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). In that vein, we could not sanction an attorney for failing to pursue a client matter for which the client was no longer eligible. The materiality of the reason why Respondent did not file a federal habeas corpus petition on behalf of Mr. Brown is particularly salient given the circumstances surrounding Respondent's prior disciplinary action. In that matter we concluded that Respondent violated MRPC 3.3(a) (Candor Toward the Tribunal) by having submitted petitions for expungement for which his clients were not eligible. *Att'y Grievance Comm'n v. Tanko*, 408 Md. 404, 423–24, 969 A.2d 1010, 1022 (2009).

With respect to Respondent's failure to pursue a parole hearing and failure to file a Health–General § 8–505 motion, the hearing judge did not resolve the conflicting testimony as to whether Respondent's representation included those matters or whether Mr. Brown expected that Respondent was pursuing those matters for him. Indeed, the hearing judge found that the retainer agreement, as Respondent and Mrs. Gosnell agreed, was never renegotiated to provide for additional services beyond the habeas corpus petition.

he disagreed with respect to the MRPC 1.1 violation. We sustain this exception.

MRPC 1.2(a)[3] requires an attorney to "abide by a client's decisions concerning the objectives of the representation and, when appropriate, . . . [to] consult with the client as to the means by which they are to be pursued." The first comment to the Rule explains, though, that "a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so." MRPC 1.2 cmt. (1). The hearing judge did not make a finding as to why Respondent did not file the habeas corpus application, or any other motion, particularly material in the matter *sub judice.*

If there was no good faith basis for filing a subsequent habeas corpus application, *see supra* note 2, then Mr. Brown's desire to file the application, alone, would not impose on Respondent that obligation. Furthermore, the hearing judge's finding that filing a federal habeas corpus petition was the goal of the representation seems to preclude the judge's finding that Respondent's failure to file "any other documents, regarding any matter or claim on behalf of Brown," was a failure to "abide by his clients' decisions concerning the objectives of representation." We conclude, therefore, that there is not clear and convincing evidence that Respondent violated MRPC 1.2(a), in connection with his representation of Mr. Brown.

### *MRPC 1.15—Safekeeping Property*

■ The hearing judge concluded that Respondent violated MRPC 1.15 by depositing the retainer fee Mrs. Gosnell paid

---

3. MRPC 1.2(a) provides, in pertinent part, that:
 a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(on behalf of Mr. Brown) into Respondent's operating account instead of a client trust account. Respondent excepts to this conclusion, asserting that he explained to Mrs. Gosnell the pertinent provision in the retainer agreement. We overrule this exception.

The hearing judge was entitled to credit Mrs. Gosnell's testimony, and, in this regard, his findings were not clearly erroneous. MRPC 1.15[4] requires an attorney to maintain a separate account to safeguard funds of clients or third persons and to deposit unearned fees into the client trust account, "unless the client gives informed consent, confirmed in writing, to a different arrangement." Informed consent is defined as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." MRPC 1.0(f). The hearing judge found that the only explanation Respondent gave to Mrs. Gosnell was provided in the retainer agreement: "Client consents to the deposit of any funds paid hereunder into the personal account of the Attorney, rather than a Client Trust Account, pursuant to Rule 1.15 of the Maryland Rules of Professional Conduct and Client acknowledges his/her familiarity with said rule." This lone

---

4. MRPC 1.15 provides, in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\*　　\*　　\*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

sentence does not include the necessary explanation of the material risks or alternatives and, therefore, does not constitute "informed consent" required by MRPC 1.15. There is clear and convincing evidence that Respondent violated this Rule.

### MRPC 1.4—Communications

The hearing judge concluded that Respondent violated MRPC 1.4 by failing to communicate sufficiently with Mr. Brown and Mrs. Gosnell. Respondent excepts to this conclusion of law on the ground that he did communicate in person and on the telephone and explain the fee deposit provision in the retainer agreement. We overrule this exception.

The hearing judge, as was his prerogative, credited the testimony of Mr. Brown and Mrs. Gosnell that Respondent was difficult to reach, did not explain the fee provision to Mrs. Gosnell, and did not keep them informed as to the progress of the case. The hearing judge did not resolve explicitly, however, the conflicting evidence relating to the substance and circumstances of the communication between Respondent and Mr. Brown regarding the status of the habeas corpus petition, though he found that Respondent visited Mr. Brown in prison two times and attempted a third visit.

It appears to us, from the testimony of both Mr. Brown and Respondent, that Respondent indeed explained to Mr. Brown the low likelihood of success of a federal habeas corpus petition. We cannot make our own factual findings in this regard, however. Therefore, the sufficiency of Respondent's communication to keep Mr. Brown informed of the status of his case plays no role in our independent analysis of whether Respondent violated MRPC 1.4.

MRPC 1.4[5] imposes on an attorney the obligation to "promptly inform the client of any decision or circumstance

---

5. MRPC 1.4 provides:

 (a) A lawyer shall:

with respect to which the client's informed consent ... is required," keep his or her clients "reasonably informed about the status of the matter," and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Respondent did not fail entirely to communicate with Mr. Brown (or Mrs. Gosnell). Still, the facts that were found by the hearing judge reflect that Respondent did not fulfill his ethical obligation. First and foremost, as discussed above, Respondent was required to, but did not, obtain informed consent, pursuant to MRPC 1.15, to deposit the retainer fee into an account other than a client trust account. Moreover, Respondent failed to relay adequately his intention to terminate his representation of Mr. Brown in March 2009, and both Mrs. Gosnell and Mr. Brown believed that the representation was on-going. Those findings support, by clear and convincing evidence, a violation of MRPC 1.4.

### Rule 8.1—Bar Admission and Disciplinary Matters

 Respondent excepts to the hearing judge's conclusions that Respondent violated Rule 8.1 by failing to provide to Bar Counsel information regarding Mr. Brown's complaint and "a complete list of clients whose legal matters had not been concluded in his affidavit pursuant to Maryland Rule 16–760(10) [6]." He asserts that the hearing judge's conclusions

---

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

6. Maryland Rule 16–760(c)(10) requires an attorney who has been disbarred, suspended, or placed on inactive status to provide to Bar

are "contrary to the evidence." Respondent asserts, in particular, that "[he] did not fail to provide Mr. Brown's case file to Bar Counsel." Respondent notes that he "made the file available" but "he never again heard back from anyone regarding the production of this file." Respondent also asserts that he did not include Mr. Brown's name as a client with pending matters because, at the time of Respondent's suspension, the representation had terminated in March 2009. We overrule this exception insofar as the hearing judge's conclusion of law is based on Respondent's knowing refusal to respond timely to Bar Counsel's request for disclosure of Respondent's file in the Brown matter.

The hearing judge's pertinent findings that, despite multiple requests, Respondent did not provide Mr. Brown's file until the September 2011 hearing in this matter are not clearly erroneous. Accordingly, we accept them.

MRPC 8.1(b)[7] prohibits "a lawyer . . . in connection with a disciplinary matter" from "fail[ing] to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail[ing] to respond to a lawful demand for information from an admissions or disciplin-

---

Counsel, within 30 days after the order of this Court takes effect, an affidavit stating, among other things, "the manner and extent to which the respondent has complied with the order [disbarring or suspending the attorney] and the provisions of this section."

Pursuant to Maryland Rule 16–760(c)(4), Respondent was required to provide to Bar Counsel, "[w]ithin 15 days after the date of the order, . . . a list of the attorney's clients (by name, address, and telephone number) whose legal matters have not been concluded by the respondent and identify any client matters (by name, tribunal, and docket reference) currently pending in any court or agency."

7. MRPC 8.1 provides, in pertinent part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

 \* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

ary authority," with the exception of information protected by MRPC 1.6. Respondent, despite multiple requests from Bar Counsel, did not provide Mr. Brown's file until instructed to do so by the hearing judge in open court in September 2011. Once he received authorization from Mr. Brown to release his file, Respondent had no justification for refusing to comply with Bar Counsel's demand. Moreover, when Respondent informed Petitioner that copying costs would be prohibitive, Petitioner afforded Respondent the opportunity to deliver the file to the Commission's office where copying would be completed at no cost to Respondent. Even then, Respondent failed to deliver the information lawfully requested by Petitioner. These facts support, by clear and convincing evidence, the hearing judge's conclusion that Respondent violated MRPC 8.1(b).

 We further conclude, however, that Respondent's failure to include Mr. Brown as a pending client on the list provided, pursuant to Maryland Rule 16–760(c)(4), does not constitute a violation of MRPC 8.1. To be sure, Respondent did not include Mr. Brown's name as a pending client. But the findings of the hearing judge suggest that Respondent believed the attorney-client relationship with Mr. Brown had terminated in March 2009. Therefore, Respondent did not know, as required by MRPC 8.1(b), that "a misapprehension had arisen" and therefore did not "knowingly" fail to include Mr. Brown as a pending client.

2. The Colahar matter

*MRPC 1.1—Competence*

 The hearing judge concluded that Respondent violated Rule 1.1 "by failing to keep Colahar reasonably informed about the status of her case, failing to explain the cause of action to her, and failing to file interrogatory and discovery requests during the discovery period" and because Colahar did not sign the retainer and Respondent never obtained Colahar's consent "to allowing Tanko to deposit the unpaid attorney fees into his personal account." Respondent excepts

to both the findings that underpin the judge's legal conclusion and the legal conclusion itself. We sustain this exception.

The record does not support the hearing judge's findings that Respondent failed to keep Ms. Colahar informed and explain the cause of action to her. The hearing judge evidently credited Ms. Colahar's testimony. Yet, her testimony, at best, expresses dissatisfaction with the end result of her case and frustration generally with the litigation and the weaknesses of her case. That testimony is not clear and convincing evidence that Respondent lacked, or failed to apply, the level of skill or knowledge required to handle Ms. Colahar's matter or that he was unprepared.[8] *See Att'y Grievance Comm'n v. Briscoe*, 357 Md. 554, 564, 745 A.2d 1037, 1042 (2000) ("[Complainant's] 'dissatisfaction' with respondent's representation alone does not establish a violation of MRPC 1.2.").

There is clear and convincing evidence, as presented through Petitioner's exhibits and Ms. Colahar's testimony, and Respondent's testimony, supporting that Respondent: filed a complaint on behalf of Ms. Colahar in District Court asserting that she was owed compensation from her employer[9]; dis-

---

**8.** The District Court record of the lawsuit Respondent filed on behalf of Ms. Colahar, which Petitioner submitted into evidence, reflects that the complaint was filed on August 26, 2009. On February 22, 2010, after Ms. Colahar had terminated Respondent, Ms. Colahar filed a motion

> asking for [d]ismissal of case without prejudice to reopen, or postponement base [sic] on the fact that my former attorney Mr. Louis Tanko file [sic] the wrong case. Your Honor I am trying to obtain an attorney so please grant me additional time. Additionally, I would like to reopen discovery to obtain documentation from my former employer.

The exhibit does not reflect what ultimately resulted in her case. She testified, however, that Respondent's appearance was stricken from the case in March 2010 and that the District Court assigned a new hearing date of June or July 2010. Ms. Colahar did not obtain another lawyer in anticipation of the new hearing date. The matter proceeded and ultimately, Ms. Colahar's suit was not successful.

**9.** The complaint alleged

> [t]hat on or about December 17, 2007, the Plaintiff entered into an employment contract with the Defendant. The Plaintiff has fully performed pursuant to said contract. The Defendant, however, has breached said contract by failing to pay to the Plaintiff all monies due

cussed with Ms. Colahar the defendant-employer's interrogatory requests; argued that disclosure of Ms. Colahar's tax return information was privileged [10]; and withdrew from her case after she terminated the representation because, according to Ms. Colahar, "he's not in [her] best interest." Moreover, Ms. Colahar's testimony reflects that, although she could not identify the name of the cause of action in the complaint Respondent filed on her behalf, Ms. Colahar understood that the purpose of the lawsuit was to obtain money due her from her employer, which is the allegation in the complaint Respondent filed on her behalf.

We also cannot accept the hearing judge's conclusion that Respondent violated MRPC 1.1 by failing to file discovery. There is no evidence in the record demonstrating that the decision was incompetent, discovery should have been pursued, or the failure to do so was prejudicial to Ms. Colahar's litigation.

---

thereunder, including unpaid overtime, unused vacation time, unused sick leave, underpaid salary, etc. In addition, Defendant is liable to Plaintiff in an amount up to three times the amount of pay owed pursuant to law. Plaintiff has suffered damages from the aforementioned breach in an amount which exceeds $30,000.00.

10. Ms. Colahar testified that,

at the hearing[,] ... [Respondent] called me outside and told me they need by [sic] W–2 paper and my tax paper, and I said, no, I'm not giving my tax paper, I have personal information in there, why do they need by [sic] tax paper? You [sic] supposed to be suing for money that I'm owed, it have [sic] nothing to do with my tax paper. And he told me if I do not give them my tax paper then I'm going the [sic] lose the case. I say, you're telling me this now? I say you have [sic] opportunity to tell me before, you never did, and at that time I said to myself I'm going to fire this lawyer because he's not in my best interest.

The hearing notes from Ms. Colahar's court file in her wages dispute case indicate that on December 29, 2009, the defendant-employer filed in open court a Motion to Compel objecting, in part, to Ms. Colahar's refusal to produce the requested tax returns. The Motion to Compel asserts that Ms. Colahar's incomplete interrogatory responses had been served on December 7, 2009. Ms. Colahar testified before the Circuit Court in the matter *sub judice* that she had discussed the interrogatory responses with Respondent.

Finally, although Respondent's failure to obtain informed consent may be a basis to conclude that Respondent violated MRPC 1.15, with respect to its provisions on Client Trust Accounts, as discussed *infra*, that failure does not demonstrate incompetence in handling Ms. Colahar's dispute with her former employer. *See Att'y Grievance Comm'n v. Robertson*, 400 Md. 618, 638, 929 A.2d 576, 588 (2007) (holding, where attorney failed to withdraw from a pending case at the time of suspension, that, although the conduct indicated a lack of diligence and failure to comply with his obligations pursuant to the suspension, it "[did] not establish a lack of competence to handle a particular matter," and therefore did not violate MRPC 1.1).

*MRPC 1.2—Scope of Representation and Allocation of Authority Between Client and the Lawyer*

Respondent excepts similarly to the hearing judge's conclusion that he violated MRPC 1.2(a) by "fail[ing] to consult with Colahar regarding the means of pursuing a claim for unpaid wages, depositing client funds outside of a trust account, and consulting with her about filing discovery requests." He asserts that Ms. Colahar's testimony reflects the contrary. For similar reasons as those discussed above, we sustain this exception.

There is no support in the record for the hearing judge's findings that Respondent did not discuss with Ms. Colahar either the cause of action or the discovery requests. Moreover, the judge's conclusion that Respondent did not abide by Ms. Colahar's objectives for the representation is not supported by clear and convincing evidence. To the contrary, Ms. Colahar sought compensation owed to her by her former employer, and that is the relief requested in the complaint Respondent filed on her behalf. And, as we explained *supra*, Respondent *did* consult with Ms. Colahar with respect to discovery. Indeed, she testified that, although she disagreed with Respondent's decision not to request discovery as it was unnecessary, she deferred to his judgment because "he's the attorney[.] . . . I was following his expertise." Likewise,

Respondent's mishandling of Ms. Colahar's retainer, although conduct that constitutes a violation of MRPC 1.15, is not in and of itself a violation of MRPC 1.2, regarding the scope of representation and the allocation of authority between attorney and client.

## MRPC 1.15—Safekeeping Property

▮▮▮ Respondent excepts to the hearing judge's conclusion that he violated Rule 1.15 because, he asserts, the retainer agreement provision reflects informed consent to the deposit arrangement. Further, Respondent rejects the hearing judge's finding that Ms. Colahar did not actually sign the retainer. We overrule this exception.

The hearing judge evidently did not base his conclusion on whether Ms. Colahar actually signed the retainer agreement, despite his finding that, in fact, she had not signed the document.[11] Instead, the hearing judge noted that "Colahar testified she did not sign this retainer agreement and did not become aware of this document until after she terminated [Respondent's] representation," and, "[r]egardless of conflicting testimony about the agreement, it is undisputed [Respondent] did not provide Colahar with a copy of MRPC Rule 1.15 nor did he explain the rule to her." Ultimately, the hearing judge concluded that, whether or not Ms. Colahar signed the retainer agreement, Respondent's failure to explain the provision, provide her a copy of Rule 1.15, or explain the rule resulted in Respondent's failure to obtain Ms. Colahar's informed consent to the deposit arrangement.

The hearing judge was entitled to credit Ms. Colahar's testimony that Respondent never explained the deposit ar-

---

11. Respondent, noting that his recollection was two and a half years after these events, testified that Ms. Colahar left their initial meeting with the retainer agreement and then returned at a later date with the funds specified in the retainer. That is why, according to Respondent, he was not with Ms. Colahar when the retainer was signed. Petitioner did not allege and the hearing judge made no findings with respect to any possible fraud regarding who signed the retainer agreement. We therefore make no comment in that regard.

rangement. Respondent failed to deposit Ms. Colahar's retainer fee into a trust account before it was earned without explaining the arrangement and the material risks associated with it. Such findings are sufficient to establish a violation of Rule 1.15(a) and (c). Moreover, as we discussed with respect to Mr. Brown, the deposit provision in the retainer does not constitute informed consent.

### MRPC 1.4—Communications

Respondent excepts to the hearing judge's conclusion that he violated Rule 1.4. His challenge simply cross-references his challenge to the hearing judge's factual findings that Respondent failed to consult with Ms. Colahar regarding several matters. We have addressed *supra* these exceptions to the factual findings. We have rejected the hearing judge's factual findings with respect to Respondent's communication as to the nature of the cause of action and his consultation regarding discovery requests because such findings were not based on clear and convincing evidence. We have accepted, as supported by the record, the hearing judge's findings with respect to Respondent's failure to communicate regarding the deposit of the retainer funds.

Accordingly, we sustain Respondent's exception with respect to the conclusion that he failed to keep Ms. Colahar adequately informed about the status of her case. Nevertheless, Respondent violated Rule 1.4, by failing to obtain Ms. Colahar's informed consent to deposit the retainer in Respondent's personal account. We therefore overrule Respondent's exception in this regard.

### 3. Unauthorized Practice of Law, Misconduct and the Parties's Related Exceptions

We now arrive at the alleged violations regarding unauthorized practice, which relate to both Mr. Brown and Ms. Colahar's complaints.

### MRPC 5.5—Unauthorized Practice of Law

Respondent excepts to the hearing judge's "conclu[sion] that Respondent engaged in the unauthorized prac-

tice of law," arguing that the "conclusion is not supported by the evidence." He refers us to the proposed findings of fact and conclusions of law he submitted to the hearing judge. He claims that he did not violate Rule 5.5 because, according to his interpretation of the evidence presented, *"five* agencies indicated that Respondent was authorized to practice law in Maryland and/or actually provided such authorization in the time period subsequent to Respondent's sixty (60) day suspension." He refers to the following: the Maryland Judiciary website listing his name; the erroneous renewal of his MSBA card; the Anne Arundel County Sheriff's Department having photographed Respondent to obtain his MSBA card; the Jessup Correctional Institution's approval of Respondent's letter requesting an attorney visit; and the Client Protection Fund of the Bar of Maryland listing his name.

The hearing judge found, pertinent to this alleged violation, that this Court suspended Respondent from practice for a sixty-day period beginning April 17, 2009, *Att'y Grievance Comm'n,* 408 Md. 404, 426, 969 A.2d 1010, 1024 (2009) (*Tanko I* ); and Respondent failed to apply for reinstatement at the expiration of the sixty-day period before he began representing clients actively. The findings are undisputed and we accept them.

MRPC 5.5 [12] prohibits an attorney from "practic[ing] law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction." The Rule also prohibits "[a] lawyer who is not admitted to practice in this jurisdiction [from] . . . establish[ing] an office or other systematic and continuous

---

12. MRPC 5.5 provides, in pertinent part:

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

presence in this jurisdiction for the practice of law[,]" or "hold[ing] out to the public or otherwise represent[ing] that the lawyer is admitted to practice." This Court authorizes, or not, any particular attorney to practice law in this State. Respondent's failure to apply for reinstatement, pursuant to Maryland Rule 16–781,[13] before he engaged in new client matters, forecloses a conclusion that he was authorized to practice. Moreover, Respondent never paid the fees assessed by this Court pursuant to his suspension and never presented a sufficient reason why he should have been reinstated despite his failure to pay. *See* Md. Rule 16–781(g) ("The Court may order reinstatement if the petitioner meets each of the following criteria or presents sufficient reasons why the petitioner should nonetheless be reinstated: ... (8) The petitioner has paid all sums previously assessed by order of the Court of Appeals."). For these reasons, Respondent cannot seek shelter in the fact that he saw his name on the Client Protection Fund Website or that the MSBA (a voluntary membership organization) issued him a renewed membership card.

As it is undisputed that Respondent provided legal representation after the sixty-day suspension period expired without having been reinstated by this Court, Respondent thereby violated MRPC 5.5(a). Respondent's conduct also violated Rule 5.5(b)(1) and (b)(2). The representation he provided amounted to a "systematic and continuous presence in this

---

13. Maryland Rule 16–781, "Reinstatement," provides, in part:

(a) **Petition.** A petition for reinstatement to the practice of law shall be filed in the Court of Appeals. It shall be verified and include docket references to all prior disciplinary or remedial actions to which the petitioner was a party. A copy of the order that disbarred or suspended the petitioner from the practice of law, placed the petitioner on inactive status, or accepted the petitioner's resignation shall be attached, together with any opinion of the Court that accompanied the order. The petition shall certify that the petitioner has complied in all respects with the provisions of Rule 16–760 and with the terms and conditions of the disciplinary or remedial order. Except as provided in section (e) of this Rule, the petition shall allege facts describing the petitioner's original misconduct, subsequent conduct and reformation, present character, present qualifications and competence to practice law, and ability to satisfy the criteria specified in section (g) of this Rule.

jurisdiction for the practice of law" and he held "out to the public ... that [he was] admitted to practice in this jurisdiction."

We turn now to Petitioner's exception pertaining specifically to "the hearing judge's failure to find that Respondent violated Rule 5.5(a) by practicing law *during* his sixty (60) day suspension." [14] (Emphasis added). Though perhaps not explicitly stated in the discussion of those rules, the totality of the hearing judge's findings and conclusions reflect that the judge rejected Respondent's testimony that his representation of Brown had terminated in March 2009 and commenced for a separate matter at the end of 2009. The hearing judge found that "[Respondent] did not prepare or file a writ of habeas corpus on behalf of Brown at any time *during the course of this representation during 2008–2010*." (Emphasis added.) The hearing judge concluded, in his discussion of MRPC 8.4(b), that "[t]he retainer agreement in the Brown case, as well as the testimonies from Brown and the Gosnells, demonstrate that [Respondent] practiced during his sixty (60) day suspension and there is no evidence to the contrary." The hearing judge also noted within the same discussion that "[Respondent's] representation of Brown *during and after his April 17, 2009 suspension* constituted a violation of Rule 5.5," (emphasis added), which, in turn, constituted a separate violation of MRPC 8.4(b). From these findings and conclusions, we discern that the hearing judge indeed found that Respondent was practicing law during his sixty-day suspension, based on Respondent's failure to terminate effectively his representation of Mr. Brown.

---

**14.** Bar Counsel has informed us that there is an apparent conflict in the hearing judge's conclusions. In the discussion of Respondent's violation of MRPC 5.5, it is indicated that "[Respondent] *waited* sixty (60) days after his suspension on April 17, 2009 and began to practice law again without being reinstated by the Court of Appeals." (Emphasis added.) As we discuss, the hearing judge's subsequent discussion of the MRPC 8.4 violation indicates that, indeed, the hearing judge found that the representation continued "*during and after* his April 17, 2009 suspension [which] constitutes a violation of Rule 5.5." (Emphasis added.)

That said, there is not clear and convincing evidence in the record that Respondent engaged in the practice of law during the sixty-day suspension. We have explained that it is "difficult to craft an all encompassing definition of the 'practice of law,'" stressing that "we must look at the facts of each case and determine whether they fall[ ] within the fair intendment of the term." *Att'y Grievance Comm'n v. Ambe*, 425 Md. 98, 128, 38 A.3d 390, 408 (2012) (quoting *Att'y Grievance Comm'n v. Hallmon*, 343 Md. 390, 397, 681 A.2d 510, 514 (1996) (internal quotation marks and citation omitted) (alteration in original)). "To determine whether an individual has engaged in the practice of law, the focus of the inquiry should be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Id.* at 129, 38 A.3d at 408 (quoting *Hallmon*, 343 Md. at 397, 681 A.2d 510) (internal quotation marks and citation omitted).

Cognizant of this definition, we conclude that Respondent did not violate MRPC 5.5 during the sixty-day period of suspension because, upon our independent review of the record, we see no evidence that Respondent engaged in any activity that would constitute practicing law during that period. To the contrary, the evidence presented to the hearing judge, including the testimony of Mr. Brown and Mrs. Gosnell, reflects that Respondent did not do any work to advance Mr. Brown's case during that time period. Respondent's failure to terminate his representation of Mr. Brown, standing alone, does not indicate that Respondent engaged in the practice of law.[15] This improper conduct does not equate, under the facts presented in this matter, to a violation of MRPC 5.5. *Cf. Robertson*, 400 Md. at 638, 929 A.2d at 588 (recognizing that an attorney who fails to execute his responsibilities upon suspension, though not commendable, does not violate MRPC 1.1 regarding competency in a specific matter). We empha-

---

**15.** We offer no comment as to whether Respondent's failure to terminate his representation of Mr. Brown violates other duties owed to Mr. Brown as well as Respondent's duties related to his prior suspension. *See, e.g.,* MRPC 1.16, "Declining or Terminating Representation." Petitioner, however, did not charge such a violation.

size, though, our conclusion that Respondent, in any event, violated MRPC 5.5 by practicing after the sixty-day suspension period terminated.

### MRPC 8.4—Misconduct

Respondent, citing generally "the reasons aforesaid," excepts to the hearing judge's conclusions that Respondent's other violations collectively constitute violations of MRPC 8.4.

MRPC 8.4(a) provides that an attorney engages in "professional misconduct" if he or she "violate[s] or attempt[s] to violate the [MRPC]." We have concluded that Respondent violated several of the Rules of Professional Conduct, including 1.1, 1.4, 1.15, 5.5, and 8.1. These violations lead necessarily to the conclusion that Respondent has also committed misconduct, in violation of Rule 8.4(a). *See Att'y Grievance Comm'n v. Foltz*, 411 Md. 359, 411, 983 A.2d 434, 465 (2009) ("As we have held that respondent violated several Rules of Professional Conduct, he necessarily violated MRPC 8.4(a) as well." (quoting *Att'y Grievance Comm'n v. Gallagher*, 371 Md. 673, 710–11, 810 A.2d 996, 1018 (2002))).

Moreover, MRPC 8.4(b) further provides that a lawyer commits professional misconduct if he or she "commit[s] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Respondent's continued representation of clients after this Court suspended him for sixty-days constitutes a violation of MRPC 8.4(b). Maryland Code (2000, 2010 Repl.Vol.), § 10–601 [16] and § 10–602 [17] of the Business Occupations and Profes-

---

**16.** Maryland Code (2000, 2010 Repl.Vol.), § 10–601 of the Business Occupations and Professions Article provides, in pertinent part:

(a) *In general.*—Except as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar.

(b) *Activities of lawyers on disciplinary status.*—While an individual is on inactive status or disbarred or while the individual's right to practice law is suspended or revoked, the individual may:

 (1) discharge existing obligations;

 (2) collect and distribute accounts receivable; or

sions Article prohibit the unauthorized practice of law in this State. Further, § 10–606(a)(3) of that Article provides that a person who violates § 10–601 is guilty of a misdemeanor and subject to a fine not exceeding $5000, imprisonment not exceeding one year, or both. Section 10–606(c) in turn provides that any other violation of the subtitle, except as provided in subsections (a) and (b), is a misdemeanor and subject to a maximum $1000 fine, one year imprisonment, or both.

An actual conviction is not required to establish that an attorney violated MRPC 8.4(b), so long as the underlying conduct that constitutes the crime is proven by clear and convincing evidence. *Att'y Grievance Comm'n v. Jarosinski,* 411 Md. 432, 454, 983 A.2d 477, 490 (2009). The finding that Respondent violated MRPC 5.5 supports the conclusion, by clear and convincing evidence, that Respondent also violated the unauthorized practice provisions of the Business and Professional Occupations Article. Because unauthorized practice of law is unquestionably a "criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," there is clear and convincing evidence that Respondent violated MRPC 8.4(b). We therefore overrule Respondent's exception to that violation.

That Respondent may have been mistaken about the status of his suspension does not justify unauthorized practice because "there was no basis in fact or law for him to have believed that he was authorized to act as he did." *Att'y Grievance Comm'n v. Shryock,* 408 Md. 105, 122, 968 A.2d 593, 603 (2009) (where attorney was indefinitely suspended, noting that "[t]here is no evidence that Shryock was mistaken about

---

(3) perform any other act that is necessary to conclude the affairs of a law practice but that does not constitute practicing law.

**17.** Section 10–602 of the Business Occupations and Professions Article provides:

Unless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including "lawyer", "attorney at law", or "counselor at law", by description of services, methods, or procedures, or otherwise, that the person is authorized to practice law in the State.

the status of his suspension. Even if he were mistaken, it would not have justified an unauthorized practice of law"). *But see Att'y Grievance Comm'n v. Harris–Smith,* 356 Md. 72, 87, 737 A.2d 567, 575 (1999) (concluding that hearing judge was not clearly erroneous in finding no violation of MRPC 8.4(b) because attorney was "attempting to conduct a bankruptcy practice in a lawful manner by limiting her court appearances to the federal district" although her conclusion that her conduct was proper was erroneous). Respondent knew he had been suspended and knew he never applied for reinstatement and thereby had no plausible basis to believe his conduct was proper. That he practiced without authorization because he ignorantly believed he had no affirmative obligation to seek reinstatement certainly reflects negatively on his fitness as a lawyer.

We now turn to Petitioner's allegation that Respondent violated MRPC 8.4(c), which prohibits an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." "[A]ssuming that Bar Counsel alleged that an attorney engaged in fraudulent conduct, evidence as to an attorney's specific intent would be relevant and properly considered in assessing whether [MRPC] 8.4(c) was violated." *Att'y Grievance Comm'n v. Reinhardt,* 391 Md. 209, 221, 892 A.2d 533, 540 (2006). Moreover, this Court has held that misrepresentation is inherently dishonest. *Att'y Grievance Comm'n v. Siskind,* 401 Md. 41, 70, 930 A.2d 328, 345 (2007). Therefore, "in order to establish its case against [an attorney], Bar Counsel is required to prove with clear and convincing evidence that [the attorney's] supposed false statements were made with *knowledge* that such statements were false when he made them." *Id.* at 68, 930 A.2d at 344 (quoting *Att'y Grievance Comm'n v. Mooney,* 359 Md. 56, 78, 753 A.2d 17, 29 (2000)) (alterations in original).

In *Siskind* we clarified the distinction, for purposes of MRPC 8.4(c), between "(1) pure acts (as opposed to words), which generally are not inherently fraudulent or deceitful, and (2) knowingly making a false statement, which is inherently dishonest." 401 Md. at 70, 930 A.2d at 345. We explained

that, "[i]n the former case, specific intent is typically necessary to be proven to demonstrate that the conduct in question was fraudulent in fact. On the other hand, words spoken by an attorney who knows they were untrue involves an inherent intent to deceive." *Id.*, 930 A.2d at 345.

In the matter *sub judice*, Respondent's conduct was unquestionably improper. He had no plausible basis to believe he was authorized to practice automatically upon the termination of his sixty-day suspension. The hearing judge also found, however, that Respondent acted without the intent to deceive and with an honest (though unfounded) belief that he was authorized to practice. These findings are credibility determinations for which we defer to the hearing judge. Under the facts of this case, Respondent did not act with either knowledge or specific intent to deceive. As we explained in *Siskind*, "the misrepresentation must be made by an attorney who *knows* the statement is false, rather than the product of mistake, misunderstanding, or inadvertence." 401 Md. at 68–69, 930 A.2d at 344. We cannot conclude, therefore, that Respondent's conduct was infected with "dishonesty, fraud, deceit or misrepresentation" in violation of MRPC 8.4(c). We therefore overrule Petitioner's exception in this regard.

We briefly address Petitioner's exception to "the hearing judge's failure to find that Respondent violated Rule 8.4(c) by practicing law during his sixty (60) day suspension." Because we do not find an 8.4(c) violation (and because we have rejected the hearing judge's finding that Respondent had engaged in unauthorized practice *during* the sixty-day suspension period), we conclude, similarly, that Respondent has not violated 8.4(c). Therefore, we overrule that exception of Petitioner.

Respondent's conduct violates MRPC 8.4(d), prohibiting "conduct that is prejudicial to the administration of justice," because "it is axiomatic when it is discovered and made public that a person who represents by word and deed that he can practice law when in fact he is under the disability of a[ ] . . . suspension erodes the public's confidence in the practice of

law." *Att'y Grievance Comm'n v. Maignan,* 423 Md. 191, 204–05, 31 A.3d 467, 475 (2011) (finding that the respondent attorney who was indefinitely suspended yet continued to provide legal services to a client violated MRPC 8.4(d), in addition to MRPC 8.4(a) through (c)). We, therefore, overrule Respondent's exceptions with respect to MRPC 8.4.

In sum, we conclude that Respondent has violated MRPC 1.1, 1.4, 1.15(a) and (c), 5.5(a) and (b)(1)-(2), 8.1(b) and 8.4(a), (b) and (d). We now turn to the hearing judge's findings regarding mitigation, and Petitioner's exceptions thereto.

### 4. Mitigation

Petitioner excepts to "each specific finding of mitigation": (1) "[Respondent's] good faith efforts to ensure he was in good standing"; (2) "[Respondent's] good faith belief that he was still licensed"; (3) "[Respondent's] prompt return of his MSBA card upon his discovery that it was expired"; and (4) "Respondent 'did not intend to misrepresent his clients or the court(s), or deceive clients into believing he was authorized to practice law when in fact he had not been reinstated.'" We sustain all but the last of these exceptions.

We have stated the following with regard to reinstatement:

Reinstatement to practice, following suspension for a stated period, is subject to two conditions, first, the filing of a verified statement by the suspended attorney that the attorney has complied in all respects with the terms of suspension, and second, the notification by Bar Counsel to this Court that Bar Counsel is satisfied that there has been compliance with the terms of the suspension.

*Att'y Grievance Comm'n v. James,* 340 Md. 318, 328, 666 A.2d 1246, 1250–51 (1995). Respondent testified that he had read this Court's opinion and order in *Tanko I,* suspending him for 60 days and ordering him to pay costs (which he did not pay). Moreover, Respondent *admitted* that he had read Maryland Rule 16–760 (addressing sanctions, including definite suspension) and generally the other Maryland Rules, which, we note, include Rule 16–781 (addressing reinstatement). Indeed, at-

torneys in Maryland are charged with knowledge of the Maryland Lawyers' Rules of Professional Conduct. *Att'y Grievance Comm'n v. Pennington,* 387 Md. 565, 589–90, 876 A.2d 642, 656 (2005).

Only one reasonable conclusion can be drawn from that admission: Respondent knew, but ignored, the conditions precedent to resumption of the practice of law. It follows necessarily that *none* of the information upon which the hearing judge found Respondent had relied approaches "good faith," at least from an objective point of view. As such, we construe the hearing judge's reference to Respondent's having a "good faith" belief that he was authorized to resume the practice of law to mean merely that the hearing judge believed Respondent *subjectively* believed that to be so, and he clung to that subjective belief in the face of what he also knew, from his reading of the pertinent Rules, which in fact negated that subjective belief. What does not follow, though, is that his subjective belief actually mitigates his conduct.

Once Respondent knew (or should have known) that he was required to satisfy this Court's mandate in *Tanko I* that he "shall pay all costs as taxed by the Clerk of the Court, including costs of all transcripts, pursuant to Maryland Rule 16–761," he could not *reasonably* have believed that any or all of the following—issuance of an MSBA card or the inclusion of his name on a listing of the Client Protection Fund, or even informal "advice" from several attorney friends—permitted him to resume practicing law without first complying with the dictates of Rule 16–781 and then being reinstated by this Court. Likewise, he could not have harbored an objectively reasonable belief that he was excused from the pre-conditions of Rule 16–781 for reinstatement.

Petitioner's final exception concerns the hearing judge's findings that "[Respondent] did not intend to misrepresent his clients or the court(s), or deceive clients into believing he was authorized to practice law when in fact he had not been reinstated"; and, "[a]s soon as [Respondent] realized that he was not authorized to practice law, [Respondent] sent out

letters to his current clients and withdrew from cases." Petitioner asserts that Respondent only acted in response to Petitioner's investigation, noting that the time "when Respondent 'realized that he was not authorized to practice law' " coincided with Petitioner's investigation, when, in Petitioner's words, "Respondent had been caught engaging in the unauthorized practice of law." It follows, according to Petitioner, that such conduct could not serve to mitigate Respondent's violations both because he was required to notify clients and withdraw from cases pursuant to his suspension and because the conduct occurred after the violations.

We shall defer, as we must, to the hearing judge's credibility determination that "[Respondent] did not *intend to misrepresent* his clients or the court(s), or *deceive* clients into believing he was authorized to practice law when in fact he had not been reinstated." (Emphasis added.) The weight we accord to that finding is minimal in light of our conclusion that Respondent nonetheless knew (or should have known) from his reading of the pertinent Rules that, in fact, he was not entitled to resume the practice of law, absent reinstatement.

### III.

#### *Sanctions*

Thus far, we have addressed Petitioner and Respondent's exceptions, including Petitioner's exceptions regarding the hearing judge's findings as to mitigation. Having concluded that Respondent has · violated several of the Maryland Lawyers' Rules of Professional Conduct, including practicing without authorization, we now must determine the appropriate sanction.

Our purpose in sanctioning attorneys who have violated the ethical rules is well known. We have explained time and again that "the purpose of disciplinary proceedings against an attorney is not to punish the attorney, but rather to protect the public." *Att'y Grievance Comm'n v. Nwadike,* 416 Md. 180, 201, 6 A.3d 287, 299 (2010). And, "[t]he public is protected when sanctions are imposed that are commensurate

with the nature and gravity of the violations and the intent with which they are committed." *Id.*, 6 A.3d at 299 (quoting *Att'y Grievance Comm'n v. Post*, 379 Md. 60, 70–71, 839 A.2d 718, 724 (2003)). Moreover, "[t]he aim of sanctions also is to set the standard of integrity for members of the legal profession and to demonstrate the kind of conduct the Court will not tolerate." *Id.*, 6 A.3d at 299.

Petitioner recommends a sanction of disbarment and cites to several cases in which this Court has disbarred attorneys who had engaged in the unauthorized practice of law, several of which involved additional violations of MRPC 8.4(c) ("engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation"). Respondent made no recommendation as to an appropriate sanction in the paper he filed with this Court, but at oral argument he recommended, should we find one or more violations of the Rules (as we have), that this Court impose a reprimand or "time served suspension."

 In determining the appropriate sanction, we consider any mitigating factors and pertinent aggravating factors. Aggravating factors include the following:

> (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution.

*Id.*, 6 A.3d at 299 (quoting *Bleecker*, 414 Md. at 176–77, 994 A.2d at 945–46).

 In the case at bar, several aggravating factors apply. This matter is not Respondent's first disciplinary action. Indeed, Respondent's failure to seek reinstatement after his prior suspension, and his subsequent resumption of his practice led to the instant charges. These violations demonstrate

a pattern of Respondent's failure to comply with his ethical obligations, beginning before his suspension and continuing through that period. We also find Respondent's length of experience to be an aggravating factor, as he was admitted to the Maryland Bar in 1989.

■ For the reasons we explained above, we find little among the hearing judge's findings in mitigation that, in the end, assist Respondent. We must, and do, consider the hearing judge's findings that Respondent held a subjective belief that he could resume practicing law and that he did not act with a specific intent to "misrepresent" or "deceive" his clients. Yet, these findings are entitled to virtually no weight in light of our conclusion, based on Respondent's testimony that he had read this Court's opinion and order in *Tanko I* and had reviewed the pertinent rules concerning suspension and reinstatement.

Recently, in *Attorney Grievance Commission v. Khandpur*, 421 Md. 1, 18, 25 A.3d 165, 175–76 (2011), we considered the appropriate sanction to impose on an attorney who had violated MRPC 1.3, 1.15(a) and (c), 8.1(b), and 8.4(d) by "fail[ing] to represent his client with reasonable diligence, fail[ing] to keep proper records for his Attorney Trust Account and properly hold client payments in trust until earned, and frustrat[ing] Bar Counsel's investigation by carelessly making false statements and knowingly failing to produce documents demanded by Bar Counsel." We noted that Khandpur's violations, as determined by the hearing judge, "were the result of [his] 'laziness or ineptitude,' rather than an intent to deceive." *Id.* at 18, 25 A.3d at 176. We also emphasized that "[i]t [wa]s most significant ... that [the hearing judge] did not find that [Khandpur] was acting from a dishonest motive." *Id.* at 22, 25 A.3d at 178. Moreover, we noted that the hearing judge had also found that " '[Khandpur's] acts and omissions during the investigation were not intentional' and did not violate MRPC 8.4(c), which involves 'dishonesty, fraud, deceit or misrepresentation.' " *Id.* at 22–23, 25 A.3d at 178. Based on those findings, we then decided that indefinite suspension, with the

right to apply for re-admission after sixty days, was the appropriate sanction. *Id.* at 26, 25 A.3d at 180.

In the matter *sub judice*, Respondent similarly did not act with a selfish motive or an intent to deceive, as reflected by the hearing judge's credibility determinations. Although Respondent engaged in the unauthorized practice of law, the hearing judge found, nevertheless, that Respondent honestly believed he had no affirmative duty to seek reinstatement before beginning to practice. He did not deliberately ignore the suspension Order from this Court during the sixty-day period and believed, albeit erroneously, that he was automatically authorized to practice after the sixty-day period concluded.

Finally, we are guided by the "vital consideration[ ]" that "each attorney grievance case rests on its own merits." *Att'y Grievance Comm'n v. Brisbon*, 422 Md. 625, 644, 31 A.3d 110, 121–22 (2011) (quoting *Att'y Grievance Comm'n v. Garcia*, 410 Md. 507, 529, 979 A.2d 146, 159 (2009)). Respondent's conduct is serious and brings disrepute to the legal profession. But we must defer to the hearing judge's findings that Respondent did not act with the intent to deceive or with selfish motive. It is the absence of a specific intent to deceive, inherently dishonest conduct, and selfish motive that spares Respondent from the ultimate sanction of disbarment and distinguishes this case from others in which attorneys engaged in unauthorized practice.

Considering the totality of Respondent's rule violations, including all applicable aggravating and mitigating factors, we conclude that the proper sanction in this case is an indefinite suspension.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LOUIS P. TANKO, JR.**