KLUPT *v.* BAR ASSOCIATION OF BALTIMORE CITY

[No. 145, October Term, 1950.]

*Decided May 17, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Howard C. Bregel* and *Malcolm J. Coan* for appellant.

*Jacob Kartman* and *A. Frederick Taylor* for appellee.

HENDERSON, J., delivered the opinion of the Court.

Alvin L. Klupt, an attorney in active practice since 1937, was disbarred by unanimous action of the Supreme Bench of Baltimore City on October 23, 1950, after an extended hearing in which nine of the eleven judges participated. He appeals here, under Section 17, Article 10 of the Code, contending that the evidence did not show that he was guilty of professional misconduct and, if it did, the order of disbarment was more severe than the nature of his offense and the ends of justice require.

The Bar Association alleged misconduct in three different transactions, which must be stated in some detail. In the first, it was shown that a builder, Abbott, had entered into a contract with one Kozlowski on January 12, 1949 for the installation of a bathroom and heating system in the latter's home for a total cash price of $2,800: "cash with order $1,300, to be paid January 28, 1949, unpaid balance $1,500, finance charges $224.68, time balance $1,724.68, payable in thirty-six equal monthly installments of $47.91 each." At the same time Kozlowski signed an "F.H.A. credit application" to the Baltimore Federal Savings and Loan Association for $1,500, and signed a printed form of installment, confessed judgment note, payable at the office of the building association, which was left blank as to payee, date, amount and maturity. On January 17, 1949, the parties entered into another contract for another improvement, of which the total cash price was $311, "cash on completion." Both jobs were completed about February 20, but Kozlowski had been unable to make the cash payment scheduled for January 28 because another house which he owned had not been sold. He had declined to execute completion certificates for either job on the ground that the work was not in accordance with the contracts.

On February 21 Abbott consulted Klupt and turned over all the documents to him. He told him he had not received the cash payment of $1,300, and that there had been a disagreement as to the proper completion of the work, but gave him no instructions beyond "protecting his interests". After calling Kozlowski to demand payment, on the same day Klupt filled in the note and entered judgment by confession in favor of Abbott for $3,567.29, with interest and costs and an attorney's fee of $539.09. All of the written matter, except the signatures, was inserted by Klupt, who also made oath, on his personal knowledge, that the indebtedness was due and owing. The amount was arrived at by including the cash payment of $1,300, finance charges on the cash payment, the amount of the contract for $311 and finances charges calculated on that amount, as well as the balance of $1,500 plus finance charges on that amount. As filled in, the note required monthly payments of $99.06, instead of $47.91, to begin February 15, although the work had not been completed on that date. The judgment, of course, carried six per cent interest on the total amount from its date.

The second transaction complained of is quite similar to the first. Abbott entered into two contracts for improvements with one Meerdter, one for a total price of $556, cash with order $56, balance $500 plus finance charges of $74.90, the other for a total price of $373, cash with order $38, balance $335 plus finance charges of $50.18. A dispute arose as to satisfactory completion, and Abbott consulted Klupt. Klupt filled in the note and entered judgment by confession for the sum of the time balances, finance charges and a fifteen per cent attorney's fee.

Klupt's actions in these transactions cannot be justified. The inclusion in the note of the down payment of $1,300 was not authorized by the contract, nor the payment of $311 to be paid on completion. The notes were not intended to be used except in the event of building association loans, to be advanced on completion

certificates, and finance charges were in no event payable to Abbott. Cf. *Vane v. Stanley Heating Company,* 160 Md. 24, 32, 152 A. 511. It is perfectly clear that Klupt deliberately distorted the terms of the contracts, and falsely made oath to a state of facts which he knew, or should have known, to be untrue. In addition to the inflated attorney's fees made a part of the judgments, Klupt charged Abbott $100 in the *Kozlowski* case and $50 in the *Meerdter* case.

It is urged that Klupt acted in an excess of zeal for his client Abbott, that the judgments were eventually striken out and the cases settled. But zeal cannot justify a complete disregard of the rights of the opposing parties, or a false representation to the court that entered the judgments on the faith of sworn statements. Cf. *In re Stark,* 265 App. Div. 936, 38 N. Y. S. 2d 402. Nor can we regard the actions of an attorney admittedly experienced in this field as due to inadvertence. In *Gramatan National Bank v. Barron,* 193 Md. 649, 69 A. 2d 489, Klupt, as counsel for the appellant, sought to sustain the action of a payee in inserting in a note a false place of execution. We clearly stated in that case that there is no implied authority to exceed the authorization given. Cf. *Forwood v. Magness,* 143 Md. 1, 121 A. 855.

The third transaction involves the conduct of Klupt in relation to one Strohecker, who was engaged in two businesses at the same location, one a retail hardware and paint store, and the other a heating and plumbing contracting business. Klupt knew Strohecker through collecting some accounts for him, but was not his general counsel. He saw in the Daily Record a notice that a federal tax lien of some $4,000 had been filed against Strohecker and called him to inform him of this. At a conference the next day, Sunday, December 5, 1948, Klupt told Strohecker that the government would close him down unless he took immediate steps to arrange payment. Klupt suggested bankruptcy, which Strohecker rejected, then a receivership, and finally a deed of trust for the benefit of creditors. Klupt took with him to this

conference forms to cover each of these suggestions. Strohecker finally signed a form of deed of trust in favor of one Niport, a law student and friend of Klupt who was present. However, the deed was not acknowledged until several days later. Klupt represented that the paper would merely give Klupt authority to hold an auction sale to dispose of the hardware stock, some old trucks and anything else Strohecker wanted to dispose of, but not the plumbing and heating business. Klupt's version of the representations is widely different from Strohecker's, but the latter was corroborated by Niport. Klupt's name subsequently was placed on the document as co-trustee. There is a dispute as to whether the document was altered by Klupt without authority, or whether Strohecker consented to the change. Klupt received a check for $500 from Strohecker, and there is likewise a dispute as to whether this was to be used for expenses or in part as a fee for forming a new corporation to bid in part of the stock in trade. Klupt's assertion that this was his purpose shows a particular obtuseness to the fact that such an expenditure would deplete assets at the expense of creditors. A sale at auction of all Strohecker's assets was was advertised for December 20, 1948. A few days before the sale Strohecker's regular attorney, who had been out of town, intervened and had the sale called off and the deed of trust set aside. Klupt eventually refunded the $500, and then stopped payment on the check.

It is not disputed that after the conference on December 5, and on several occasions thereafter, Klupt took various articles of merchandise from Strohecker's store for which he did not pay. The value of these articles is in dispute, ranging from a few dollars to three hundred dollars. The impropriety of such conduct needs no comment.

In estimating the truth of the testimony in dispute, we must accord full weight to the findings of the judges who saw and heard the witnesses. *In re Meyerson*, 190 Md. 671, 687, 59 A. 2d 489. Klupt's testimony as to

how his name came to be inserted in the deed of trust was contradictory and evasive. His insistance that he had done no wrong indicates a total lack of appreciation of the duties of his calling. If we assume that Strohecker, having been through bankruptcy once before, was probably not so naive as he tried to appear, and that he was in financial straits at the time of the conference and executed the deed of trust with knowledge of its effect, we cannot escape the conclusion that Klupt misrepresented the effect of the filing of the federal tax lien. The filing of the lien was merely the initial step to protect the government's claim, and there was no immediate threat of enforcement. Indeed, it would appear that Strohecker would have been afforded more time to liquidate his stock, complete his contracts and raise money under that procedure than under the deed of trust. No other creditors were pressing him. As a matter of fact, Strohecker has remained in business and has been allowed to pay the taxes due in installments. Klupt was not merely guilty of volunteering unsound advice; it was advice shrewdly calculated to capitalize on Strohecker's ignorance and fears for Klupt's benefit.

The Maryland Statute* "delegates or confirms to the courts the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence. . . . the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." *Rheb v. Bar Association of Baltimore,* 186 Md. 200, 205, 46 A. 2d 289, 291. Upon a consideration of the whole record we think Klupt's unfitness is amply demonstrated, and that the unqualified order of disbarment was fully justified.

*Order affirmed, with costs.*

---

* Reporter's Note: Code (1939), Art. 10, sec. 12; cf. Code (1951), Art. 10, secs. 12, 17, annotations.