## FELLNER *v.* BAR ASSOCIATION OF BALTIMORE CITY

[No. 170, October Term, 1956.]

*Decided May 7, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Ellis Levin,* with whom were *Hyman C. Ullman* and *Calman A. Levin* on the brief, for the appellant.

*Sol C. Berenholtz* and *Julius G. Maurer* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was disbarred by order of the Supreme Bench of Baltimore City. The proceeding was instituted by a petition reciting that the appellant had been charged in the

Criminal Court of Baltimore with violating Code (1951), Art. 27, sec. 74, by inserting slugs instead of coins in a parking meter in a City parking lot. He had entered a plea of *nolo contendere* to the charge and had been fined $250.00 and costs, which he paid. The appellant contends that, under the stipulation of counsel entered into before the Supreme Bench, his guilt was not established, that the facts do not show that he was guilty of such conduct as to justify disbarment, and that in any event the order of permanent disbarment was too severe.

The stipulation was entered into, with the approval of the Supreme Bench, in lieu of having the witnesses for the Bar Association, who were present, testify in open court. The facts stated were that on November 29, 1955, eighteen slugs were found in the collections that went through the validating machine, representing collections from the Sam Smith Parking Area meters. On December 10, 1955, there were sixteen slugs; on December 16, two slugs. The meters are so arranged that the maximum time that can be purchased is ten hours at a cost of 50 cents. The last coin inserted is visible through the glass top, known as the "Scotch Eye". This last coin remains visible until another coin is inserted, and when the meters are cleared the only coin that remains is the one visible in the Scotch Eye. That, however, can be removed if desired.

On December 14, 1955, an investigation was made at the Sam Smith Parking Area and all the meters were emptied. Three meters contained two slugs each. The police obtained the license numbers of three automobiles and one of them was Maryland License No. AF 64-41, titled in the name of the appellant's wife. The next morning investigation showed that only the meter where this car was parked contained slugs. All of the parking meters were cleared that night at midnight, and the police watched the area from 7 A. M. the next morning. At about 8 A. M., the appellant, driving the automobile bearing the license number above stated, was seen to park his car and insert something in the meter. The meter was opened in his presence and found to contain a quarter and two slugs the size of a quarter. A nickel was visible in the

Scotch Eye. The meter showed ten hours of unexpired parking time. Fellner declined to make any statement, but was taken to the police station and charged. Here he gave the name of Harry Jackson, but the officers soon learned his true identity. The officers searched his car and found two boxes of slugs, wrapped in brown paper but opened. One box contained slugs the size of a quarter, the other slugs the size of a dime. The quarter size slugs were similar to those removed from the meter. When the next collection was made from the meters in the parking area no slugs were found.

The appellee concedes that the plea of *nolo contendere* in the criminal case did not establish the fact of guilt in the disbarment proceeding. See Note, 152 A. L. R. 254. But the appellee did not rely on that plea to prove the charge brought before the Supreme Bench, but was prepared to prove its case by the testimony of witnesses. The stipulated facts, we think, amply support the finding of guilt. It is true, as the appellant points out, there was no proof that a third person may not have operated the meter between midnight and 7 A. M., but in that case the time shown on the meter would have been less than the full ten hours. A quarter inserted would cause the machine to register for five hours time, a second quarter for ten hours. If additional coins were inserted, this would not alter the time registered, which would diminish with the passage of time. The appellant was seen to operate the meter. A reasonable explanation of what occurred is that the quarter was in the Scotch Eye when the meters were cleared at midnight; that when the appellant parked there he inserted two slugs the size of quarters, and also a nickel which would then be visible in the Scotch Eye, and conceal the fact that slugs had been inserted. It is difficult to escape the conclusion that at least one of the slugs was inserted by the appellant. Other circumstances of the case, such as the previous finding of slugs in a meter where his car was parked, and the finding of similar slugs in his car at the time of his arrest, support an inference of guilt. We also note the fact that he gave a fictitious name to the police, which might indicate a consciousness of guilt.

The law of the case seems perfectly clear. In *Rheb v. Bar*

*Ass'n of Baltimore,* 186 Md. 200, 205, it was said: "The Maryland statute relating to the disbarment of lawyers [Code (1951), Art. 10, sec. 17], which contains not only the phrase 'crime involving moral turpitude' but also the phrase 'conduct prejudicial to the administration of justice,' delegates or confirms to the courts the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence. We decline to give to the phrase last quoted a restricted meaning. In the last analysis the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." See also *In re Meyerson,* 190 Md. 671, 676; *Klupt v. Bar Ass'n of Balto. City,* 197 Md. 659, 664; *Braverman v. Bar Ass'n of Balto.,* 209 Md. 328, 343, 345.

In the instant case, the offense committed by the appellant was not a casual or thoughtless one. The evidence supports the inference that he resorted to a deliberate and systematic practice of cheating the City by the use of slugs. Morally, the offense was as great as though he had stolen money deposited by others in the meters, and amounts at least to "fraud or deceit". It is not without significance, as bearing upon his moral fitness, that he has never yet admitted that he did wrong. It was admitted in his answer to the petition filed against him in the Supreme Bench that he denied the offense in his testimony before the Grievance Committee, and in that answer he also denied under oath that he had committed the offense charged. Yet he did not take the stand before the Supreme Bench. This is not a criminal proceeding, in which the defendant has a right to stand mute. There is no constitutional right to practice law, and as was said in *In re Meyerson, supra* (p. 687): "No 'moral character qualification for Bar membership' is more important than truthfulness and candor."

We fully agree with the conclusion reached by the Supreme Bench, without dissent, that the appellant should be permanently disbarred.

*Order affirmed, with costs.*