896 A.2d 337

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Mark S. GUBERMAN.**

**Misc. Docket (Subtitle AG) No. 73, Sept. Term, 2004.**

Court of Appeals of Maryland.

April 13, 2006.

**132**

James B. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Argued before BELL, C.J., WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BELL, C.J.

Bar Counsel, acting with the approval and at the direction of the Attorney Grievance Commission of Maryland, the petitioner, *see* Maryland Rule 16–751,[1] filed a *Petition For Disciplinary or Remedial Action* against Mark S. Guberman, the

---

1. Md. Rule 16–751(a) provides:

   "(a) *Commencement of Disciplinary or Remedial Action.*
   "(1) Upon Approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.
   "(2) Conviction of Crime; reciprocal Action. If authorized by Rule 16–771(b) or 16–773(b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission. Bar Counsel promptly shall notify the Commission of the filing. The Commission on review may direct the withdrawal of a petition that was filed pursuant to this subsection.
   Bar Counsel previously had filed a "Statement of Charges" against the respondent. Adopted November 30, 2000, effective July 1, 2001, Maryland Rule 16–741 governs the filing of "statements of charges." It provides:
   "(a) *Filing of Statement of Charges.*
   "(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:
   "(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;
   "(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;

respondent, charging him with violating Rule 8.4(c) and (d) (Misconduct) [2] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. We referred the case for hearing, pursuant to Rule 16–752,[3] to the Honorable DeLawrence Beard of the Circuit Court for Montgomery County. The respondent answered the Petition, after which the matter was set for hearing. Following the hearing, the hearing court, pursuant to Rule 16–757(c),[4] found the following facts to have been proven by clear and convincing evidence:

"The Respondent ... graduated from George Washington University Law School in 1995. He was admitted to the Bars

---

"(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and
"(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."
The filing of the "statement of charges" triggered the peer review process, *see Maryland* Rules 16–741(b), 16–742, and 16–743, which was completed prior to the filing of the *Petition for Disciplinary or Remedial Action.*

2. Rule 8.4(c) and (d) provides that "[i]t is professional misconduct for a lawyer to: ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation [and] engage in conduct that is prejudicial to the administration of justice."

3. Rule 16–752 provides, as relevant:
"(a) *Order.* Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

4. Rule 16–757(c) provides:
"(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

of the District of Columbia and Pennsylvania. In 2001, Mr. Guberman was admitted to the Bar of the Court of Appeals of Maryland.

"Respondent was an employee of the Law Firm of Shulman, Rogers, Gandal, Pordy and Ecker, P.A. from September 12, 2000 to July 30, 2004. He worked in the firm's office in Rockville, Maryland, handling civil litigation. Ross D. Cooper, Esquire, supervised Mr. Guberman's work.

"The Shulman, Rogers firm represented Steven Reighard in two related matters. The first matter was filed in federal court in Virginia and resulted in a substantial recovery for Mr. Reighard. The second case was filed in the Circuit Court for Fairfax County, Virginia. That case alleged that the defendants had prepared a false and defamatory report, justifying Mr. Reighard's former employer to discharge him 'for cause.' As a result, Mr. Reighard was deprived of a life insurance policy. Mr. Guberman was responsible for handling Mr. Reighard's case. An associate of the firm, Matthew Moore, Esquire, who was admitted to the Virginia Bar, was co-counsel and reviewed papers and pleadings prepared by Mr. Guberman regarding Mr. Reighard's case.

"The Circuit Court for Fairfax County granted summary judgment in favor of the defendants in June 2003, dismissing Mr. Reighard's complaint. Mr. Reighard advised Mr. Guberman that he did not want to appeal the case because he did not want to incur additional fees and expenses. Mr. Guberman discussed the matter with Mr. Cooper and Mr. Moore. Mr. Cooper instructed Mr. Guberman to tell Mr. Reighard that the firm would modify the fee arrangement if he pursued an appeal. Mr. Guberman did not convey that offer to Mr. Reighard.

"When Mr. Cooper later asked him about the status of the case, Mr. Guberman said he had filed a Notice of Appeal in the Circuit Court. In September 2003, Mr. Guberman told Mr. Cooper that he had filed a Petition For Appeal in the Supreme Court of Virginia. Mr. Guberman placed copies of these pleadings in the firm's file. Both copies bore what

appeared to be file stamps indicating that the Clerk had received and filed the pleadings.

"Mr. Guberman submitted monthly status reports to the firms. The status report dated December 22, 2003 reported that he was 'awaiting court's ruling on petition for appeal . . .'. Mr. Cooper made further inquiries about the status of the appeal in early 2004. Around the end of May 2004, at the request of Mr. Cooper, Mr. Cooper's assistant, Jessica Stitely, watched Mr. Guberman call the court to check on the status of the case. Ms. Stitely was informed that the case was still pending.

"In July 2004, Mr. Cooper made inquiries with the Virginia courts and learned that the appeal had never been filed and that the filing receipt stamps were not genuine. When confronted by Mr. Cooper, Mr. Guberman acknowledged that he never filed the appeal. The firm terminated Mr. Guberman's employment on July 30, 2004.

"Mr. Reighard never authorized Mr. Guberman to file an appeal. He never was told by Mr. Guberman that an appeal had been filed."

From the foregoing facts, which it found, as indicated, by clear and convincing evidence, *Attorney Griev. Comm'n v. Culver*, 381 Md. 241, 265–266, 849 A.2d 423, 438 (2004), Rule 16–757(b),[5] the hearing court drew conclusions of law, as follows:

"Mr. Guberman engaged in conduct involving dishonesty and misrepresentation in violation of Rule 8.4(c) of the Maryland Rules of Professional Responsibility by falsely representing to Mr. Cooper and other representatives of the Shulman, Rogers firm that he had filed an appeal in Mr. Reighard's case. He engaged in conduct prejudicial to the

---

5. Maryland Rule 16–757(b) provides:

"The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

administration of justice by creating falsified filing stamps on papers, falsely certifying that the papers had been filed in court."

Neither the petitioner nor the respondent, who neither appeared nor participated in the proceedings in this Court, took exceptions to the hearing court's findings of fact or conclusions of law. The petitioner did file *Petitioner's Recommendation For Sanction*, in which it urged the respondent's disbarment. Emphasizing the hearing court's conclusion, based on its findings that the respondent prepared fictitious appellate pleadings, which he supported and certified as true by oral and written status reports, that the respondent, in violation of Rules 8.4(c) and (d), engaged in dishonest conduct and conduct prejudicial to the administration of justice, it relies on *Attorney Griev. Comm'n v. Pennington*, 387 Md. 565, 876 A.2d 642 (2005); *Attorney Griev. Comm'n v. Lane*, 367 Md. 633, 790 A.2d 621 (2002) and *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001).

It is well settled that it is the responsibility, indeed, the duty, of this Court "to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." *Rheb v. Bar Ass'n of Baltimore*, 186 Md. 200, 205, 46 A.2d 289, 291 (1946). *See Vanderlinde*, 364 Md. at 387, 773 A.2d at 469; *Attorney Griev. Comm'n of Maryland v. Post*, 350 Md. 85, 96, 710 A.2d 935, 940 (1998); *Attorney Griev. Comm'n of Maryland v. Protokowicz*, 326 Md. 714, 716, 607 A.2d 33, 34 (1992); *Maryland State Bar Ass'n, Inc. v. Agnew*, 271 Md. 543, 549, 318 A.2d 811, 814 (1974); *Fellner v. Bar Ass'n*, 213 Md. 243, 247, 131 A.2d 729, 731 (1957); *Braverman v. Bar Ass'n of Balto.*, 209 Md. 328, 343–345, 121 A.2d 473, 480–481 (1956); *Klupt v. Bar Ass'n of Balto. City*, 197 Md. 659, 664, 80 A.2d 912, 914 (1951) *In re Meyerson*, 190 Md. 671, 676, 59 A.2d 489, 490 (1948). In discharging that duty, " '[t]he question is whether, after the conduct of this man [or woman], it is proper that he [or she] should continue a member of a profession which should stand free from all suspicion.... It is not by way of punishment;

but the courts, on such cases, exercise their discretion whether a man [or woman] whom they have formerly admitted is a proper person to be continued on the roll or not.' " *Rheb,* 186 Md. at 205, 46 A.2d at 291, quoting *Ex parte Brounshall,* 2 Cowp. 829 (1778). Moreover, it likewise is well settled that the courts have "the power and duty to consider the particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence." *Attorney Griev. Comm'n v. DeMaio,* 379 Md. 571, 581–82, 842 A.2d 802, 808 (2004); *Rheb,* 186 Md. at 204, 46 A.2d at 291.

■ Consequently, in protection of the public, the purpose of attorney discipline, *see Attorney Griev. Comm'n v. Steinberg,* 385 Md. 696, 703, 870 A.2d 603, 607 (2005); *Attorney Griev. Comm'n v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004); *Attorney Griev. Comm'n v. Ayres–Fountain,* 379 Md. 44, 58, 838 A.2d 1238, 1246 (2003); *Attorney Griev. Comm'n v. Myers,* 333 Md. 440, 446, 635 A.2d 1315, 1318 (1994), we have held that disbarment follows as a matter of course "when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances . . ." *Agnew,* 271 Md. at 553–54, 318 A.2d at 817. To do otherwise, we concluded, "would constitute a travesty of our responsibility." *Id.* And, because "[c]andor and truthfulness are two of the most important moral character traits of a lawyer," *see Attorney Griev. Comm'n v. Myers,* 333 Md. at 449, 635 A.2d at 1319 (1994); *Attorney Griev. Comm'n v. Levitt,* 286 Md. 231, 238, 406 A.2d 1296, 1299 (1979); *Fellner,* 213 Md. at 247, 131 A.2d at 732; *In re Meyerson,* 190 Md. at 687, 59 A.2d at 496, deliberate and systematic conduct amounting at least to "fraud or deceit" has resulted in the imposition of the ultimate sanction of disbarment. *Fellner,* 213 Md. at 247, 131 A.2d at 731–732.[6] So, too, have the failure to keep

---

6. In *Fellner v. Bar Ass'n,* 213 Md. 243, 247, 131 A.2d 729, 732 (1957), the reprehensible conduct was the use of slugs in the parking meters in

records, where that failure justified a finding of an intent to cheat, coupled with participation in a fraudulent stock scheme and to a breach of a confidential relationship. *Rheb,* 186 Md. at 209, 46 A.2d at 293. We have also ordered disbarment where an attorney, previously suspended for making misrepresentations, misrepresented his driving record during a traffic court trial at which he was charged with speeding. *Myers,* 333 Md. at 449, 635 A.2d at 1319.

The more recent cases, upon which the petitioner relies, are consistent and support the petitioner's position. In *Pennington,* having missed the filing deadline imposed by the statute of limitations, the respondent in that case, in lieu of informing the client of her dereliction, made "misrepresentation[s]" and engaged in "deceitful conduct" to conceal that, and how, she had mishandled the clients' claims: "falsifying a supposed settlement of those claims with the insurer, intentionally misrepresenting matters in negotiations with third-party health care providers to reduce their charges to the Butlers, and concealing from the Butlers the facts that might have supported lodging a professional negligence claim against respondent," 387 Md. at 596, 876 A.2d at 660, and producing a fictitious "statement of settlement," pursuant to which she paid the client with her own funds. 387 Md. at 591, 876 A.2d at 658. In ordering disbarment, this Court noted that the attorney's misrepresentations and the manufacture of false and fraudulent documents "implicate the core responsibilities of truth and honesty expected of attorneys." *Id.* at 596, 876 A.2d at 660. We also observed:

> "Respondent's attempt to purchase a plenary indulgence with her own money is more indicative of a selfish plan to conceal than of a praiseworthy desire to 'make the client whole.' Whether respondent acted to prevent her clients from knowing that they had a potential malpractice claim against her, or whether she acted out of a desire to spare her ill client further anguish, the profession is harmed when

---

the City of Baltimore, a practice that the Court concluded was neither "casual nor thoughtless."

an attorney intentionally misrepresents matters to a client and behaves in the manner as did respondent."

*Id.* at 597–98, 876 A.2d at 661.

The attorney in *Lane* misrepresented on numerous occasions to two clients the status of their cases, falsely advising one of them that she had recovered a large judgment, the recovery of which was being held up by the appeal of the defendant. Like in *Pennington,* he paid one of the clients supposed damages from his own funds and, to make his representations credible to the client, paid sums she allegedly owed to the defendant against whom he was expected to pursue a remedy on the client's behalf. In ordering the attorney's disbarment, we emphasized his "repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated instance." 367 Md. at 647, 790 A.2d at 629. We also commented:

"Respondent engaged in a pattern of continued deceitful misrepresentations of the most egregious nature, to the extent that his conduct amounted to intentional dishonesty. He has not provided any mitigation for his pattern of misrepresentations. Respondent failed to diligently act on his clients' behalf and he then compounded this failure by engaging in a pattern of deceitful and lying conduct designed to conceal his lack of diligence."

*Id. See* also *Vanderlinde,* 364 Md. at 418, 773 A.2d at 488, in which we opined:

"Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character."

We adopt the petitioner's recommendation; the appropriate sanction is disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PUR-

SUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST MARK S. GUBERMAN.