*Attorney Grievance Commission of Maryland v. Ronald Marc Levin*, Miscellaneous Docket AG No. 75, September Term, 2012

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Respondent, Ronald Marc Levin, violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") during his employment at Joseph, Greenwald & Laake, P.A. Levin misrepresented his workload and created fictitious clients and fictitious client papers in order to distort his net originated income and shield his salary from adjustments reflecting his lower than anticipated performance. Such conduct violated MLRPC 8.4(a), (b), (c), and (d). Taken together, Levin's violations of the MLRPC warrant disbarment.

Circuit Court for Montgomery County
Case No. 28279-M
Argued: March 6, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 75

September Term, 2012

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

RONALD MARC LEVIN

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Adkins, J.

_____

Filed: May 16, 2014

Petitioner, the Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, Ronald Marc Levin. Bar Counsel alleged that Levin, in connection with his employment at the law firm of Joseph, Greenwald & Laake, P.A. ("JGL") from December 2010 through November 2011, engaged in professional misconduct as defined by Md. Rule 16-701(i), violating sections (a), (b), (c) and (d) of Rule 8.4 of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), as adopted by Md. Rule 16-812. Rule 8.4 of the MLRPC states, in pertinent part:

> **Rule 8.4 Misconduct.**
>
> It is professional misconduct for a lawyer to:
>
>> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>> (d) engage in conduct that is prejudicial to the administration of justice[.]

Following a hearing before the Circuit Court for Montgomery County, the hearing judge found that Levin violated Rule 8.4(a) and Rule 8.4(c), but did not violate Rule 8.4(b) or Rule 8.4(d).

## THE HEARING JUDGE'S CONCLUSIONS

The disciplinary hearing was held before a judge of the Circuit Court for Montgomery

County.  Both parties appeared and presented evidence.  The hearing judge made the following findings of fact based upon clear and convincing evidence:

> The following facts are not in dispute.  Respondent Levin became a member of the Maryland Bar on June 17, 1992.  The Respondent practices exclusively bankruptcy law, and appears in bankruptcy courts in both Maryland and the District of Columbia.  On November 1, 2010, Respondent signed an Employment Agreement with JGL.  According to the terms of the Agreement, Respondent's employment with JGL would commence on December 1, 2010 and continue for a period of one year.  The Agreement also indicated that Respondent's salary would be 50% of his net originated income ("NOI").  During the hearing on April 25, 2012, David Bulitt, Esquire, a shareholder and Assistant Managing Director with JGL, testified that NOI is defined as the attorney's gross fee income from all cases and clients originated by that attorney minus certain charges (costs and other attorneys working on the cases).  Respondent's initial salary could not be determined in advance, so his initial salary was set at $200,000.  This salary would be reviewed on a quarterly basis by the firm's Director of Finance and the firm's Executive Committee, per the terms of the Agreement, and adjustments could be made based on actual performance.

> The Respondent worked for JGL from December 2010 to October 2011, and during the course of Respondent's employment, Respondent made false statements to Mr. Bulitt with respect to the number of cases he was handling, the number of legitimate bills he had sent, and his expectation of payment.  Mr. Bulitt, who has been a personal acquaintance of the Respondent since childhood days, conducted the quarterly reviews of the Respondent's work performance.  During these reviews, as well as on other occasions, Respondent misrepresented to Mr. Bulitt the size of his caseload and the fee amounts he expected to receive from such work.  In furtherance of these oral misrepresentations, the Respondent created fictitious clients and drafted paperwork for these fictitious clients and showed these documents to Mr. Bulitt.

2

In October 2011, the Respondent received a job offer from another law firm and notified JGL of his intention to resign. The [R]espondent left his employment with JGL in October 2011. Based on a final review conducted by Mr. Bulitt of the Respondent's work performance, a significant deficiency was discovered between Respondent's initial salary and his actual earnings for the firm. It was determined that the Respondent owed the firm $151,191.17 based on the deficiencies in his client billings. The Respondent did not contest the deficiency and paid this debt in full to JGL on December 29, 2011.

Mr. Bulitt testified that, had the Respondent been candid with him about his actual work performance and client billings, the firm would have reduced the Respondent's $200,000 salary accordingly. This Court accepts that statement as true because, if salary adjustments were not going to be made, Mr. Bulitt would not have met with the Respondent until the end of the year. Furthermore, the Respondent feared a decrease in his pay and went to great lengths in order to deceive the firm.

The Respondent concedes [that] he has violated sections (a) and (c) of Rule 8.4 of the Maryland Lawyers' Rules of Professional Conduct. Therefore, the issues in dispute in this case are: whether the Respondent's misrepresentations to Mr. Bulitt and JGL and the falsified client billings he created violated sections (b) and (d) of Rule 8.4, and what if any aggravating and/or mitigating factors exist. Because of the Respondent's willful misrepresentations and dishonest conduct, JGL continued paying the Respondent installments of his $200,000 annual salary.

The Court finds that the Respondent's motivations for his misrepresentations to JGL were his need to support himself and his family, and to avoid embarrassment. The Court finds that the Respondent's misrepresentations were deliberate and continuous throughout his employment with JGL. The Respondent was fully aware of the wrongfulness of his acts and specifically intended to conceal such conduct. The Respondent did not elect to self-report his deficient performance to the firm prior to his departure from JGL and JGL's detection of his

3

deceptive practices. Mr. Bulitt's and the Executive Committee's final audit revealed the extent of the Respondent's dishonest conduct. Furthermore, it was only after JGL threatened to report the Respondent's conduct to the Attorney Grievance Commission that the Respondent reported his activities to Maryland Bar counsel.

Once the Respondent was made aware of the financial toll of his poor performance at JGL[,] the Respondent paid the entire debt of $151,191.17 within two months. As a Member of the Maryland Bar and an employee of JGL, it was the Respondent's obligation to maintain honesty and candor toward his employer with respect to his performance and financial compensation.

## Conclusions of Law

Maryland Rule 16-757 governs a disciplinary hearing before the Circuit Court. The Petitioner, the Attorney Grievance Commission, has the burden of proving the averments of the petition by clear and convincing evidence. Maryland Civil Pattern Jury Instruction 1:9 gives the definition of clear and convincing evidence as follows:

> To be clear and convincing, evidence should be "clear" in the sense that it is certain, plain to the understanding, and unambiguous and convincing in a sense that it is so reasonable and persuasive as to cause you to believe it. This burden of proof requires more than a preponderance of the evidence, but less than beyond a reasonable doubt.

Here, the Petitioner is seeking to prove that Respondent committed four acts of misconduct under Rule 8.4. The Court considers each provision separately. The Respondent concedes that he violated sections (a) and (c) and this Court finds that there is ample evidence to support that conclusion.

Rule 8.4(a) is a catch-all provision that is violated when any other Rule of Professional Conduct is violated. The Respondent

4

concedes his violation of Rule 8.4(a) due to his violation of Rule 8.4(c). Because the factual circumstances and case law presented by the parties support the Respondent's violation of section (c), the Court finds by clear and convincing evidence that the Respondent also violated Rule 8.4(a).

Rule 8.4(b) provides that misconduct exists where an attorney commits a "criminal act" affecting the attorney's honesty, trustworthiness or fitness as an attorney "in other respects." For purposes of section (b), an actual conviction is unnecessary to demonstrate that the Respondent's [sic] committed misconduct.

The Petitioner identifies the "criminal act" committed under these circumstances as Unauthorized Control Over Property – By Deception, Section 7-104(b) of the Maryland Criminal Code. This provision states:

> (b) A person may not obtain control over property by willfully or knowingly using deception, if the person:
>
>> (1) intends to deprive the owner of the property;
>>
>> (2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
>>
>> (3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

The Petitioner argues that the Respondent deprived the firm of its property (money) by creating false clients and client billings. It further contends that as a direct consequence of the Respondent's fraudulent conduct and misrepresentations, JGL continued to pay the Respondent a salary that he had not earned

5

according to the terms of the Employment Agreement.

The Respondent counters that, as "deprive" is defined under Md. Code Ann., Crim. Law §7-101(c), the Respondent had no intent to deprive JGL of the property, either permanently or for a period of time that was sufficient to appropriate a portion of its value. Instead, he was aware that, upon financial review by Mr. Bulitt, the Respondent would be indebted to the firm for any deficiency between his salary and his NOI, and he would merely have to repay the firm.

The Court finds that the Petitioner has not proven by clear and convincing evidence that the Respondent violated Rule 8.4(b). The evidence presented by the Petitioner demonstrates that the Respondent intended to misrepresent his client billings in order to maintain his initial salary. However, the Petitioner failed to prove that the Respondent intended to deprive the firm of its property permanently or for a period of time sufficient to dispose of a part of its value. The Respondent's acts did not rise to the level of a criminal act. The Respondent's prompt repayment of his entire debt is a mitigating factor only and does not disprove intent to commit a criminal act. Nevertheless, the Petitioner did not meet its burden of proof.

Rule 8.4(c) states that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Respondent concedes that he violated section (c) and admits that he made untrue statements to Mr. Bulitt and other JGL officials about his caseload and client billing; though he denies that they rise to the level of fraud. The Respondent admitted that he knew that he would have to "pay the piper" at some point in time. The Court finds that the factual circumstances and case law presented by the Petitioner support the conclusion that the Respondent violated Rule 8.4(c).

The Petitioner argues lastly that, pursuant to Rule 8.4(d), the Respondent engaged in conduct that was "prejudicial to the administration of justice." The Respondent argues that the Petitioner's burden is higher to prove misconduct under section

(d) than section (c), because conduct that is "prejudicial to the administration of justice" must "seriously impair public confidence in the entire profession, without extenuating circumstances." The Respondent distinguishes his conduct as "private" and not something that affects public confidence in the profession. As support for this contention, the Respondent cites Attorney Grievance Comm'n v. Link, 380 Md. 405[, 844 A.2d 1197] (2004), wherein the Maryland Court of Appeals held that "[o]nly when such purely private conduct is criminal or so egregious as to make the harm, or potential harm, flowing from it patent will that conduct be considered as prejudicing, or being prejudicial to, the administration of justice." This Court concludes that case law supports the finding that the Respondent's conduct here was essentially private in nature, consisting of false representations to his employer. The conduct did not "seriously impair public confidence" in the profession, and this Court holds that the Petitioner failed to satisfy its burden of proof under section (d).

This Court is vested with the responsibility to examine every attorney grievance on its own merits, taking into account its unique factual circumstances. Thus, the Court must evaluate any aggravating and mitigating factors presents [sic] in this case.

The Court first analyzes any mitigating factors present in this case. Mitigating factors in attorney grievance cases can include:

> [A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

7

See Attorney Grievance Comm'n v. Gordon, 413 Md. 46, 63, 991 A.2d 51[, 61] (2010) (quoting Attorney Grievance Comm'n v. Sweitzer, 395 Md. 586, 599, 911 A.2d 440, 448 (2006)).

The Court finds by clear and convincing evidence that the following mitigating factors exist: the Respondent's recognition of the wrongfulness of his actions, his full payment of the financial debt to the firm within two months, and his self-reported misrepresentations and falsified billings to the Maryland Bar.

However, the Court must also weigh these circumstances against the aggravating factors identified in Attorney Grievance Comm'n v. Bleecker, 414 Md. 147[, 994 A.2d 928] (2010), and located at Standard 9.22 of the American Bar Association Standard for Imposing Lawyer Sanctions. The parties dispute four of these factors specifically: the Respondent's (b) dishonest or selfish motive, (c) a pattern of misconduct, (d) multiple offenses, and (i) substantial experience in the practice of law. Based upon the factual circumstances of this case, this Court agrees with both parties that the other aggravating factors of Standard 9.22 are inapplicable here.

As to (b), the Court acknowledges that the Respondent's motivation was not due to a purely selfish desire to gain money from JGL. The Respondent was supporting his wife and three children, two of whom were in college. As a consequence of this and other personal financial problems, the Respondent chose to proactively mislead his employer into believing that he was performing at an acceptable level of productivity. This was not a matter of willful ignorance or even passive recognition: the Respondent affirmatively made statements and drafted documents attesting to falsified information in order to misrepresent his performance to JGL.

Furthermore, the Respondent's defense of "embarrassment" and fear for his reputation within the firm provides little defense. The Respondent's conduct and statements were dishonest and selfish, and thus the Court finds that (b) is an aggravating factor in evaluating the Respondent's misconduct.

8

The Respondent's behavior was also systemic because the Respondent made misrepresentations to Mr. Bulitt at each quarterly review and on other occasions, too. He also provided false client billings in aid of these oral statements. The Court thus incorporates (c) and (d) together as factors contributing to its conclusion that the Respondent engaged in a continuous pattern of misconduct during his employment for JGL.

The Respondent had nearly twenty years of experience in bankruptcy law. Furthermore, the Respondent engaged in private practice within a firm setting for this same period of time, and should have had a thorough understanding that his conduct was unacceptable. Therefore, the Court finds that aggravating factor (i) exists.

Wherefore, this Court concludes this 10th day of June, 2013, that the Petitioner met its burden of proof and proved by clear and convincing evidence that the Respondent violated Rule 8.4(a) and (c), but failed to meet its burden of proof and did not prove that the Respondent violated Rule 8.4(b) and (d). Therefore, the Circuit Court recommends that violations under (a) and (c) be upheld, and that violations under (b) and (d) be dismissed by the Court of Appeals, but [sic].

(Citations omitted).

## DISCUSSION

Our task in attorney discipline proceedings is well established:

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Att'y Grievance Comm'n v. Bleecker*, 414 Md. 147, 167, 994 A.2d 928, 940 (2010) (citations omitted). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Att'y Grievance Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010) (quoting *Att'y Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006)). That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of

9

the witnesses. *Id*. at 707, 4 A.3d at 964. In that regard, "[t]he hearing judge is permitted to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Guida*, 391 Md. at 50, 891 A.2d at 1095 (quoting *Att'y Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000)).

We review de novo the hearing judge's proposed conclusions of law. *Att'y Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 236 (2008). In other words, "the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court." *Att'y Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 764 (2002) (quoting *Att'y Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (alteration in original)). In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a "clear and convincing" standard of proof. *Att'y Grievance Comm'n v. Siskind*, 401 Md. 41, 54, 930 A.2d 328, 335 (2007).

*Att'y Grievance Comm'n v. Tanko*, 427 Md. 15, 27–28, 45 A.3d 281, 288 (2012) (citations omitted).

## EXCEPTIONS

The AGC submitted exceptions to the hearing judge's failure to find that Levin violated Rules 8.4(b) and 8.4(d). Respondent did not file any exceptions to the trial court's findings of fact or conclusions of law.

Concerning Rule 8.4(b), Petitioner argues that the hearing court erred by failing to conclude that "the Respondent intended to deprive the firm of its property permanently or for a period of time sufficient to dispose a part of its value." Petitioner contends that Respondent deprived his employer of its property through deception, thereby violating Md. Code (2002,

10

2012 Repl. Vol.), § 7-104(b) of the Criminal Law Article ("CL").[1]  Parsing the statute,

Petitioner highlights that CL § 7-101(c) defines "deprive" as withholding the property of

another:

> (1) permanently; (2) for a period that results in the appropriation
> of a part of the property's value; (3) with the purpose to restore
> it only on payment of a reward or other compensation; or (4) to
> dispose of the property or use or deal with the property in a
> manner that makes it unlikely that the owner will recover it.

Because Respondent repaid his employer from a home equity line of credit, Petitioner argues,

Respondent no longer possessed the unearned compensation, and thus had appropriated this

property, satisfying the intent element under CL § 7-101(c)(2).  Alternatively, Petitioner

alleges that Respondent's prompt repayment evinced an intent to restore the funds upon

completion of his employment, satisfying the intent element under CL § 7-101(c)(3).

Respondent counters that he never had the intent to deprive JGL of the funds, as he

---

[1]Md. Code (2002, 2012 Repl. Vol.), § 7-104(b) of the Criminal Law Article ("CL")
states the following:

> (b) *Unauthorized control over property — By deception. —* A
> person may not obtain control over property by willfully or
> knowingly using deception, if the person:
>     (1) intends to deprive the owner of the property;
>     (2) willfully or knowingly uses, conceals, or abandons
>     the property in a manner that deprives the owner of the
>     property; or
>     (3) uses, conceals, or abandons the property knowing the
>     use, concealment, or abandonment probably will deprive
>     the owner of the property.

11

always knew he would have to repay JGL and always intended to do so. Moreover, Respondent claims that he misrepresented his client billings in order to avoid embarrassment at the firm, not to maintain his unwarranted salary. Thus, Respondent urges us to affirm the hearing court's conclusion that Petitioner failed to meet its burden in proving 8.4(b).

In declining to hold that Respondent violated CL § 7-104(b), the hearing court stated:

> The Court finds that the Petitioner has not proven by clear and convincing evidence that the Respondent violated Rule 8.4(b). The evidence presented by the Petitioner demonstrates that the Respondent intended to misrepresent his client billings in order to maintain his initial salary. However, the Petitioner failed to prove that the Respondent intended to deprive the firm of its property permanently or for a period of time sufficient to dispose of a part of its value. The Respondent's acts did not rise to the level of a criminal act. The Respondent's prompt repayment of his entire debt is a mitigating factor only and does not disprove intent to commit a criminal act. Nevertheless, the Petitioner did not meet its burden of proof.

But the hearing judge never specifically explained why, in its view, Petitioner failed to meet its burden of proof. In our view, after evaluating Respondent's conduct against each element of the statute, the record is clear that Respondent violated CL § 7-104(b)(1).

First, the hearing court found that Respondent misrepresented his caseload and expected fees, creating fictitious clients and paperwork to support these misrepresentations. Additionally, the court found that JGL would have reduced Respondent's salary to its warranted level had Respondent been candid and not misrepresented his billings. Thus, Respondent obtained control over the unwarranted salary through the willful use of deception.

12

Second, Respondent repaid JGL with funds from a home equity line of credit.[2]  In other words, when Respondent paid back JGL, he did not remit the unearned compensation that he obtained from JGL, but instead transmitted different funds from a separate source. Although there is not specific evidence in the record as to where the unwarranted salary went, we can only infer that those monies were used to address Respondent's "personal financial problems." *See supra*.  Consequently, Respondent's repayment only underscored that he had withheld the property of JGL for a period sufficient to appropriate part of its value.[3]

The remaining question is whether Respondent intended to so deprive his employer of its property.  Based on our reading of the hearing court's conclusions of law, its failure to find a violation of CL § 7-104(b) was premised on Petitioner having not proven the intent

---

[2]In the Circuit Court, Respondent testified as follows:

> THE COURT: Now you paid the $151,000 back at the end of 2011?
>
> [RESPONDENT]: Yes sir.
>
> THE COURT: Where'd you get the money?
>
> [RESPONDENT]: My home equity line.
>
> THE COURT: So you took out more debt?
>
> [RESPONDENT]: Yes sir.

[3]Black's Law Dictionary defines appropriation as "[t]he exercise of control over property; a taking of possession." *Black's Law Dictionary* 117–18 (9th ed. 2009).

element.  This was erroneous.  In addressing the predecessor theft statute to CL § 7-104(b)

in *Lane v. State*, the Court of Special Appeals held that a criminal defendant's intent may be

inferred from the circumstances surrounding the conduct.  60 Md. App. 412, 423, 483 A.2d

369, 375 (1984) ("[A]ctual deprivation to the owner is merely one circumstance from which

the jury may infer that the offender committed the prohibited act with the requisite criminal

intent.").

We find that principle to be instructive here.  In our view, the numerous findings set

forth by the hearing court compel the conclusion that Respondent intended to deprive JGL

of the money constituting the unearned portion of his salary for a period sufficient to

appropriate a part of its value.[4]  As the hearing court itself observed, "[t]he Respondent's

---

[4]We highlight the following facts from the Circuit Court's findings:

- [T]he Respondent feared a decrease in his pay and went to great lengths in order to deceive the firm.

- The Court finds that the Respondent's motivations for his misrepresentations to JGL were his need to support himself and his family, and to avoid embarrassment. . . . The Respondent was fully aware of the wrongfulness of his acts and specifically intended to conceal such conduct.  The Respondent did not elect to self-report his deficient performance to the firm prior to his departure from JGL and JGL's detection of his deceptive practices.

- [T]he Court acknowledges that the Respondent's motivation was not due to a purely selfish desire to gain money from JGL.  The Respondent was supporting his wife and three children, two of whom were in college.

(continued...)

14

prompt repayment of his entire debt is a mitigating factor only and does not disprove intent to commit a criminal act." Considering all these circumstances, and for the purposes of this proceeding, we conclude that Respondent possessed the requisite intent to constitute a violation of CL § 7-104(b).

That Respondent has not been convicted of a crime under CL § 7-104(b) in no way bars our conclusion that he violated that statute or Rule 8.4(b). *See Tanko*, 427 Md. at 47, 45 A.3d at 300 ("An actual conviction is not required to establish that an attorney violated MRPC 8.4(b), so long as the underlying conduct that constitutes the crime is proven by clear and convincing evidence."). Accordingly, we sustain Petitioner's exception to the hearing court's failure to find a violation of Rule 8.4(b).

Concerning Rule 8.4(d), Petitioner argues that the hearing court erred in failing to find that Respondent's conduct did not "'seriously impair public confidence'" in the legal profession and "was essentially private in nature, consisting of false representations to his employer." "An attorney engages in conduct prejudicial to the administration of justice when he or she engages in conduct which erodes public confidence in the legal profession." *Att'y Grievance Comm'n v. Carithers*, 421 Md. 28, 56, 25 A.3d 181, 198 (2011) (citing *Att'y Grievance Comm'n v. Clark*, 363 Md. 169, 183, 767 A.2d 865, 873 (2001)). "Dishonest

---

[4](...continued)
> As a consequence of this and other personal financial problems, the Respondent chose to proactively mislead his employer into believing that he was performing at an acceptable level of productivity.

15

conduct by an attorney also may be prejudicial to the administration of justice." *Att'y Grievance Comm'n v. Rand*, 411 Md. 83, 96, 981 A.2d 1234, 1242 (2009). Conduct that is not directly related to the practice of law is not often prejudicial to the administration of justice, but can be if it is criminal or sufficiently egregious. *See Att'y Grievance Comm'n v. Coppock*, 432 Md. 629, 647, 69 A.3d 1092, 1102 (2013) ("'[O]nly when such purely private conduct is criminal or so egregious as to make the harm, or potential harm, flowing from it patent will that conduct be considered as prejudicing, or being prejudicial to, the administration of justice.'" (quoting *Att'y Grievance Comm'n v. Link*, 380 Md. 405, 429, 844 A.2d 1197, 1211–12 (2004))); *Att'y Grievance Comm'n v. Sheinbein*, 372 Md. 224, 250, 812 A.2d 981, 996 (2002) ("Generally, this Court has found conduct to be prejudicial to the administration of justice in violation of Rule 8.4(d) when there has either been conduct that is criminal in nature or conduct that relates to the practice of law.").

Because we hold that Respondent violated the criminal law by means of deception, thereby violating Rule 8.4(b), we also hold that Respondent has necessarily violated Rule 8.4(d). *See Att'y Grievance Comm'n v. Kapoor*, 391 Md. 505, 532, 894 A.2d 502, 518 (2006) ("Because [the offending attorney's] conduct was dishonest, deceitful, and criminal, it was prejudicial to the administration of justice and, also, in violation of Rule 8.4(d)."). Public knowledge that an attorney deceived his own colleagues through dishonest criminal conduct in order to in maintain an unwarranted salary reinforces the most damaging cynicisms concerning lawyers' honesty, avarice, and candor. Accordingly, we sustain

16

Petitioner's exception to the hearing court's failure to find a violation of Rule 8.4(d).

## SANCTION

"When imposing disciplinary sanctions for violations of the Maryland Rules of Professional Conduct, it is this Court's purpose to protect the public, promote general and specific deterrence, and maintain the integrity of the legal profession." *Att'y Grievance Comm'n v. Roberts*, 394 Md. 137, 165, 904 A.2d 557, 574 (2006) (citing *Att'y Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 160, 879 A.2d 58, 80 (2005)). The appropriate sanction depends on the facts and circumstances of the case before us, including our assessment of aggravating and mitigating factors promulgated by the American Bar Association.[5] *See Coppock*, 432 Md. at 648, 69 A.3d at 1103.

---

[5]Aggravating factors include:
    (a) prior disciplinary offenses;
    (b) dishonest or selfish motive;
    (c) a pattern of misconduct;
    (d) multiple offenses;
    (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
    (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
    (g) refusal to acknowledge wrongful nature of conduct;
    (h) vulnerability of victim;
    (i) substantial experience in the practice of law;
    (j) indifference to making restitution;
    (k) illegal conduct, including that involving the use of controlled substances.

American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 9.22, Compendium

(continued...)

17

Bar Counsel recommends that Respondent be disbarred.  Emphasizing that candor and

---

[5](...continued)
of Professional Responsibility Rules and Standards (2012).

Mitigating factors include:
        (a) absence of a prior disciplinary record;
        (b) absence of a dishonest or selfish motive;
        (c) personal or emotional problems;
        (d) timely good faith efforts to make restitution or to rectify consequences of misconduct;
        (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
        (f) inexperience in the practice of law;
        (g) character or reputation;
        (h) physical disability;
        (i) mental disability or chemical dependency including alcoholism or drug abuse when:
                (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
                (2) the chemical dependency or mental disability caused the misconduct;
                (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
                (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;
        (j) delay in disciplinary proceedings;
        (k) imposition of other penalties or sanctions;
        (l) remorse;
        (m) remoteness of prior offenses.

American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 9.32, Compendium of Professional Responsibility Rules and Standards (2012).

truthfulness are indispensable traits of a lawyer, Petitioner urges us to follow our rule that disbarment follows "'when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances[.]'" *Att'y Grievance Comm'n v. Guberman*, 392 Md. 131, 137, 896 A.2d 337, 341 (2006) (quoting *Maryland State Bar Ass'n, Inc. v. Agnew*, 271 Md. 543, 553–54, 318 A.2d 811, 817 (1974)).  Petitioner underscores that we have found disbarment to be appropriate when addressing "'repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated instance[.]'" *Att'y Grievance Comm'n v. Steinberg*, 395 Md. 337, 373, 910 A.2d 429, 450 (2006) (quoting *Att'y Grievance Comm'n v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 629 (2002)).

Respondent counters that a public reprimand is appropriate here, not disbarment.  He contends that he lacked the intent to deprive JGL of his unearned salary, always knew that he would have to repay the unearned salary, and did repay that salary within months of leaving the firm.  Respondent characterizes his misconduct as private in nature, and highlights his twenty-one years of practice without a previous attorney grievance complaint. Monetary gain, Respondent states, was not the real motivation for his misrepresentations and deceit; rather, embarrassment and humiliation over his slow business pushed him to this misconduct.

The hearing court found that "the Respondent's recognition of the wrongfulness of his actions, his payment of the financial debt to the firm within two months, and his self-

19

reported misrepresentations and falsified billings to the Maryland Bar" were mitigating factors. *See supra.* While we accept the first two factors as supported by the evidence, we question the significance of Respondent's self-reporting. Respondent did not contact the AGC until after JGL indicated that they would be reporting him to the AGC and he retained counsel.

The hearing court also found several aggravating factors, including the Respondent's dishonest or selfish motive, pattern of misconduct, multiple offenses, and substantial experience in the practice of law. *See supra.* We accept these findings as demonstrated by a preponderance of the evidence.

When attorneys engage in dishonest and deceitful conduct for personal gain, this Court does not hesitate to sanction such conduct with disbarment:

> [W]e have held that disbarment follows as a matter of course "when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances . . ." *Agnew*, 271 Md. at 553–54, 318 A.2d at 817. To do otherwise, we concluded, "would constitute a travesty of our responsibility." *Id*. And, because "[c]andor and truthfulness are two of the most important moral character traits of a lawyer," [*Att'y Grievance Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994)] deliberate and systematic conduct amounting at least to "fraud or deceit" has resulted in the imposition of the ultimate sanction of disbarment.

*Guberman*, 392 Md. at 137–38, 896 A.2d at 340–41 (footnote and citations omitted). *See also Att'y Grievance Comm'n v. Spery*, 371 Md. 560, 567, 810 A.2d 487, 491 (2002) (holding that disbarment was the appropriate sanction for an attorney who "converted

20

partnership money to his own use without authorization and without disclosure to [his] other partners.").

We explained the rationale behind this aggressive disciplinary posture in *Att'y Grievance Commission v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001), stating that:

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

In this case, honesty was not present in Levin's character. Respondent systematically engaged in a pattern of dishonest conduct. His misrepresentations stretched over several months, extending from communications with a colleague and personal acquaintance, to the creation of fictitious client papers. Levin's conduct was similar to that in *Guberman*, in which an attorney repeatedly misrepresented the status of a client's appeal to supervisors at his firm, even placing fake copies of court pleadings in the firm's file. 392 Md. at 134–35, 896 A.2d at 339. There, we disbarred the offending attorney. *Guberman*, 392 Md. at 139, 896 A.2d at 342. Because the mitigating factors in this case are not sufficiently compelling to excuse Respondent's misconduct, we hold that disbarment is also the appropriate sanction here. For this reason, we entered the March 7, 2014, per curiam order disbarring Respondent and awarding costs against him.

21